TOUCHE ROSS & CO. *v.* REDINGTON, TRUSTEE, ET AL.

No. 78–309.   Argued March 26, 1979—Decided June 18, 1979

REHNQUIST, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, STEWART, WHITE, BLACKMUN, and STEVENS, JJ., joined. BRENNAN, J., filed a concurring opinion, *post*, p. 579. MARSHALL, J., filed a dissenting opinion, *post*, p. 580. POWELL, J., took no part in the consideration or decision of the case.

*Arnold I. Roth* argued the cause for petitioner. With him on the briefs were *Arthur S. Linker* and *Barry S. Berger.*

*Philip R. Forlenza* argued the cause for respondent Securities Investor Protection Corp. With him on the brief were *Wilfred R. Caron* and *Rafael Pastor. James B. Kobak, Jr.,* argued the cause for respondent Redington. With him on the brief was *John W. Schwartz.**

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

Once again, we are called upon to decide whether a private remedy is implicit in a statute not expressly providing one. During this Term alone, we have been asked to undertake this task no fewer than five times in cases in which we have granted certiorari.[1] Here we decide whether customers of securities brokerage firms that are required to file certain financial reports with regulatory authorities by § 17 (a) of the Securities Exchange Act of 1934 (1934 Act), 48 Stat. 897, as amended, 15 U. S. C. § 78q (a), have an implied cause of action for damages under § 17 (a) against accountants who audit such reports, based on misstatements contained in the reports.[2]

---

*Kenneth J. Bialkin* and *Louis A. Craco* filed a brief for the American Institute of Certified Public Accountants as *amicus curiae* urging reversal.

[1] See, in addition to the instant case, *Chrysler Corp.* v. *Brown,* 441 U. S. 281 (1979); *Cannon* v. *University of Chicago,* 441 U. S. 677 (1979); *Southeastern Community College* v. *Davis, ante,* p. 397; *Transamerica Mortgage Advisers, Inc.* v. *Lewis,* No. 77–1645, cert. granted, 439 U. S. 952 (1978).

[2] In 1972, the date relevant to the instant case, § 17 (a), as set forth in 15 U. S. C. § 78q (a) (1970 ed.), read as follows:

"(a) Every national securities exchange, every member thereof, every broker or dealer who transacts a business in securities through the medium of any such member, every registered securities association, and every broker or dealer registered pursuant to section 78o of this title, shall make, keep, and preserve for such periods, such accounts, correspondence, memoranda, papers, books, and other records, and make such reports, as the Commission by its rules and regulations may prescribe as necessary or appropriate in the public interest or for the protection of investors. Such

## I

Petitioner Touche Ross & Co. is a firm of certified public accountants. Weis Securities, Inc. (Weis), a securities brokerage firm registered as a broker-dealer with the Securities and Exchange Commission (Commission) and a member of the New York Stock Exchange (Exchange), retained Touche Ross to serve as Weis' independent certified public accountant from 1969 to 1973. In this capacity, Touche Ross conducted audits of Weis' books and records and prepared for filing with the Commission the annual reports of financial condition required by § 17 (a) of the 1934 Act, 15 U. S. C. § 78q (a), and the rules and regulations adopted thereunder. 17 CFR § 240.17a–5 (1972).[3] Touche Ross also prepared for Weis

accounts, correspondence, memoranda, papers, books, and other records shall be subject at any time or from time to time to such reasonable periodic, special, or other examinations by examiners or other representatives of the Commission as the Commission may deem necessary or appropriate in the public interest or for the protection of investors."

Section 17 of the 1934 Act was substantially amended by the Securities Acts Amendments of 1975. § 14, 89 Stat. 137. The present § 17 (a) (1) contains essentially the same language as the first sentence of the 1972 version of § 17 (a). Compare 15 U. S. C. § 78q (a) (1970 ed.) with 15 U. S. C. § 78q (a) (1) (1976 ed.).

In *Ernst & Ernst* v. *Hochfelder*, 425 U. S. 185, 194 n. 13 (1976), we reserved decision on the question whether the respondents in that case could assert a private cause of action against Ernst & Ernst under § 17 (a).

[3] At the time Touche Ross performed auditing services for Weis, Commission Rule 17a–5 required Weis to file an annual report of its financial condition, including a certificate by an independent public accountant stating "clearly the opinion of the accountant with respect to the financial statement covered by the certificate and the accounting principles and practices reflected therein." 17 CFR §§ 240.17a–5 (a), (h) (1972). See also SEC Release No. 3338 (Nov. 28, 1942), X–17A–5. The Rule also required the accountant's certificate to contain a "reasonably comprehensive statement as to the scope of the audit made, including a statement as to whether the accountant reviewed the procedures followed for safeguarding the securities of customers, . . . whether the audit was made in accordance with generally accepted auditing standards applicable in the circumstances; and . . . whether the audit made omitted any procedure

responses to financial questionnaires required by the Exchange of its member firms.

This case arises out of the insolvency and liquidation of Weis. In 1973, the Commission and the Exchange learned of Weis' precarious financial condition and of possible violations of the 1934 Act by Weis and its officers. In May 1973, the Commission sought and was granted an injunction barring Weis and five of its officers from conducting business in violation of the 1934 Act.[4] At the same time, the Securities Investor Protection Corporation (SIPC), pursuant to statutory authority, applied in the United States District Court for the Southern District of New York for a decree adjudging that Weis' customers were in need of the protection afforded by the Securities Investor Protection Act of 1970 (SIPA), 84 Stat. 1636, 15 U. S. C. § 78aaa *et seq.*[5] The District Court

---

deemed necessary by the accountant under the circumstances of the particular case." 17 CFR § 240.17a–5 (g)(2) (1972). Nothing in the Rule was to be interpreted to imply authority to omit any procedure the accountant ordinarily would employ in the course of an audit made for the purpose of expressing the opinions required by the Rule. § 240.17a–5 (g) (3). Weis was required to attach an oath or affirmation to the report that the financial statements were true and correct. § 240.17a–5 (b)(2). The Commission has amended Rule 17a–5 since 1972. See 17 CFR § 240–17a–5 (1978).

[4] Some months later, several of Weis' officers were indicted, in part, for a conspiracy to violate and a number of substantive violations of the recordkeeping and reporting regulations adopted by the Commission under § 17 (a). *United States* v. *Levine,* 73 Crim. 693 (SDNY); see *United States* v. *Solomon,* 509 F. 2d 863, 865 (CA2 1975). Four of the defendants pleaded guilty to at least one substantive count; the other was found guilty of one substantive count. *Ibid.*

[5] SIPC is a nonprofit organization of securities dealers established by Congress in 1970 in the Securities Investor Protection Act. 15 U. S. C. § 78ccc. SIPC maintains a fund, supported by assessments of its members, which is used to compensate, up to specified limits, customers of brokerage firms who incur losses as a result of broker insolvencies. §§ 78ddd, 78fff (f). If SIPC determines that a member has failed or is in danger of failing to meet its obligations to customers and finds any

granted the requested decree and appointed respondent Redington (Trustee) to act as trustee in the liquidation of the Weis business under SIPA.

During the liquidation, Weis' cash and securities on hand appeared to be insufficient to make whole those customers who had left assets or deposits with Weis. Accordingly, pursuant to SIPA, SIPC advanced the Trustee $14 million to satisfy, up to specified statutory limits, the claims of the approximately 34,000 Weis customers and certain other creditors of Weis. Despite the advance of $14 million by SIPC, there apparently remain several million dollars of unsatisfied customer claims.[6]

In 1976, SIPC and the Trustee filed this action for damages against Touche Ross in the District Court for the Southern District of New York. The "common allegations" of the complaint, which at this stage of the case we must accept as true, aver that certain of Weis' officers conspired to conceal substantial operating losses during its 1972 fiscal year by falsifying financial reports required to be filed with regulatory authorities pursuant to § 17 (a) of the 1934 Act. App. 8. SIPC and the Trustee seek to impose liability upon Touche Ross by reason of its allegedly improper audit and certifica-

one of five specified conditions indicating possible financial instability, it may apply to a court of competent jurisdiction for a decree adjudicating that the customers of such member are in need of the protection afforded by the Act. § 78eee (a)(2). SIPA also provides procedures for the liquidation of brokerage firms when required. § 78fff. See generally *Securities Investor Protection Corp.* v. *Barbour,* 421 U. S. 412, 415–418 (1975).

[6] At the time Weis was liquidated, property on hand permitted the Trustee to return to the Weis customers 67% of the property they should have received. 592 F. 2d 617, 620 n. 6 (CA2 1978). Subsequent marshaling of assets and recoveries in other litigation apparently have reduced the amount of the deficit in the fund of customer property. Brief for Respondent Redington 10 n. 5. The Weis customer accounts were protected by SIPA up to a maximum of $50,000 for each customer, except that cash claims were limited to $20,000. 15 U. S. C. § 78fff (f).

tion of the 1972 Weis financial statements and preparation of answers to the Exchange financial questionnaire. *Id.*, at 15–19. The complaint alleges that because of its improper conduct, Touche Ross breached duties that it owed SIPC, the Trustee, and others under the common law, § 17 (a) and the regulations thereunder, and that Touche Ross' alleged dereliction prevented Weis' true financial condition from becoming known until it was too late to take remedial action to forestall liquidation or to lessen the adverse financial consequences of such a liquidation to the Weis customers. App. 8–9. The Trustee seeks to recover $51 million on behalf of Weis in its own right and on behalf of the customers of Weis whose property the Trustee was unable to return. SIPC claims $14 million, either as subrogee of Weis' customers whose claims it has paid under SIPA or in its own right. The federal claims are based on § 17 (a) of the 1934 Act; the complaint also alleges several state common-law causes of action based on accountants' negligence, breach of contract, and breach of warranty.[7]

The District Court dismissed the complaint, holding that no claim for relief was stated because no private cause of action could be implied from § 17 (a). 428 F. Supp. 483 (SDNY 1977).[8] A divided panel of the Second Circuit reversed. 592

---

[7] Approximately one year prior to institution of this action in federal court, SIPC and the Trustee commenced a nearly identical suit against Touche Ross in New York state court. *Redington* v. *Touche Ross & Co.*, Index No. 13996/76 (N. Y. S. Ct., N. Y. County). The parties, factual allegations, claims, and requests for damages are the same in the state-court action as they are in the federal suit, except that there is no claim in the state-court action under § 17 (a). Touche Ross has begun discovery in the state-court action, but otherwise it has remained virtually inactive since the filing of the complaint. 592 F. 2d, at 620 n. 7.

[8] In the District Court's view, § 17 (a) was essentially a bookkeeping provision. By its terms, it did not impose any duty on accountants and did not "create any rights in anybody." 428 F. Supp., at 489, 491. By contrast, the court noted that § 18 (a) of the 1934 Act, 15 U. S. C. § 78r (a), did create an express private right of action for damages arising

F. 2d 617 (1978). The court first found that § 17 (a) imposes a duty on accountants. 592 F. 2d, at 621. It next concluded, based on the factors set forth in *Cort* v. *Ash*, 422 U. S. 66, 78 (1975), that an accountant's breach of his § 17 (a) duty gives rise to an implied private right of action for damages in favor of a broker-dealer's customers, even though it acknowledged that the "legislative history of the section is mute on the issue." 592 F. 2d, at 622. The court held that SIPC and the Trustee could assert this implied cause of action on behalf of the Weis customers.[9] We granted certiorari, 439 U. S. 979 (1978), and we now reverse.

from materially misleading statements in any report filed pursuant to the 1934 Act in favor of any person who, in reliance on the statements, purchased or sold a security whose price was affected by the statements. See n. 12, *infra*. SIPC and the Trustee could not sue under § 18 (a) because neither they nor Weis' customers had bought or sold stock in reliance on the reports Touche Ross had prepared and certified. In view of § 18 (a), the court declined to infer a private right of action under § 17 (a) broader than the express remedy Congress had created in the very next section of the Act. The court concluded that the subject matter, titles, and juxtaposition of the two sections "strongly suggest a legislative intent that the *only* private claim for a violation of Section 17 was the claim created in Section 18." 428 F. Supp., at 489.

The District Court also held that since the § 17 (a) claim should be dismissed, there was no basis for exercising pendent jurisdiction over the common-law claims, and that there was no other basis for exercising subject-matter jurisdiction over the common-law claims. 428 F. Supp., at 492–493. None of these latter rulings are before us.

[9] The court rejected the District Court's conclusion that § 18 (a) was intended to be the exclusive remedy for violation of § 17 (a). Because, in the court's view, it was plain that brokers' customers were the "favored wards" of § 17 (a), it could not agree that "Congress simultaneously sought to protect a class and deprived the class [by virtue of § 18's limiting language] of the means of protection." 592 F. 2d, at 623. The court held that the Trustee could assert the § 17 (a) action on behalf of the Weis customers as "bailee" of the customer property that he was unable to return, and that SIPC could sue on behalf of the customers as "subrogee" of the customers whose claims it had paid. 592 F. 2d, at 624–625. The court also held that the Trustee could not maintain the § 17 (a) action in its own right, and it

## II

The question of the existence of a statutory cause of action is, of course, one of statutory construction. *Cannon* v. *University of Chicago,* 441 U. S. 677, 688 (1979); see *National Railroad Passenger Corp.* v. *National Association of Railroad Passengers,* 414 U. S. 453, 458 (1974) (hereinafter *Amtrak*). SIPC's argument in favor of implication of a private right of action based on tort principles, therefore, is entirely misplaced. Brief for Respondent SIPC 22–23. As we recently have emphasized, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon* v. *University of Chicago, supra,* at 688. Instead, our task is limited solely to determining whether Congress intended to create the private right of action asserted by SIPC and the Trustee. And as with any case involving the interpretation of a statute, our analysis must begin with the language of the statute itself. *Cannon* v. *University of Chicago, supra,* at 689; *Teamsters* v. *Daniel,* 439 U. S. 551, 558 (1979); *Santa Fe Industries, Inc.* v. *Green,* 430 U. S. 462, 472 (1977); *Piper* v. *Chris-Craft Industries, Inc.,* 430 U. S. 1, 24 (1977); *Ernst & Ernst* v. *Hochfelder,* 425 U. S. 185, 197 (1976).

At the time pertinent to the case before us, § 17 (a) read, in relevant part, as follows:

"Every national securities exchange, every member thereof, . . . and every broker or dealer registered pursuant

reserved decision on whether "SIPC could ever have a claim for damages other than on behalf of a broker's customers." 592 F. 2d, at 624, and n. 13. The court remanded the case to the District Court for consideration of whether to exercise pendent jurisdiction over the state actions in light of the Court of Appeals' ruling on § 17 (a) and whether to stay the federal action pending determination of the state action. 592 F. 2d, at 619 n. 3, 625. Since we hold that the Court of Appeals wrongly implied a private federal claim under § 17 (a), it is unnecessary to reach these other rulings by the Court of Appeals.

> to . . . this title, shall make, keep, and preserve for such periods, such accounts, correspondence, . . . and other records, and make such reports, as the Commission by its rules and regulations may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U. S. C. § 78q (a) (1970 ed.).

In terms, § 17 (a) simply requires broker-dealers and others to keep such records and file such reports as the Commission may prescribe. It does not, by its terms, purport to create a private cause of action in favor of anyone. It is true that in the past our cases have held that in certain circumstances a private right of action may be implied in a statute not expressly providing one. But in those cases finding such implied private remedies, the statute in question at least prohibited certain conduct or created federal rights in favor of private parties. *E. g., Cannon* v. *University of Chicago, supra* (20 U. S. C. § 1681); *Johnson* v. *Railway Express Agency, Inc.,* 421 U. S. 454 (1975) (42 U. S. C. § 1981); *Superintendent of Insurance* v. *Bankers Life & Cas. Co.,* 404 U. S. 6 (1971) (15 U. S. C. § 78j (b)); *Sullivan* v. *Little Hunting Park, Inc.,* 396 U. S. 229 (1969) (42 U. S. C. § 1982); *Allen* v. *State Board of Elections,* 393 U. S. 544 (1969) (42 U. S. C. § 1973c); *Jones* v. *Alfred H. Mayer Co.,* 392 U. S. 409 (1968) (42 U. S. C. § 1982); *J. I. Case Co.* v. *Borak,* 377 U. S. 426 (1964) (15 U. S. C. § 78n (a)). By contrast, § 17 (a) neither confers rights on private parties nor proscribes any conduct as unlawful.

The intent of § 17 (a) is evident from its face. Section 17 (a) is like provisions in countless other statutes that simply require certain regulated businesses to keep records and file periodic reports to enable the relevant governmental authorities to perform their regulatory functions. The reports and records provide the regulatory authorities with the necessary information to oversee compliance with and enforce the various statutes and regulations with which they are concerned.

In this case, the § 17 (a) reports, along with inspections and other information, enable the Commission and the Exchange to ensure compliance with the "net capital rule," the principal regulatory tool by which the Commission and the Exchange monitor the financial health of brokerage firms and protect customers from the risks involved in leaving their cash and securities with broker-dealers.[10] The information contained in the § 17 (a) reports is intended to provide the Commission, the Exchange, and other authorities with a sufficiently early warning to enable them to take appropriate action to protect investors before the financial collapse of the particular broker-dealer involved. But § 17 (a) does not by any stretch of its language purport to confer private damages rights or, indeed, any remedy in the event the regulatory authorities are unsuccessful in achieving their objectives and the broker becomes insolvent before corrective steps can be taken. By its terms, § 17 (a) is forward-looking, not retrospective; it seeks to forestall insolvency, not to pro-

---

[10] See, e. g., Study of Unsafe and Unsound Practices of Brokers and Dealers, Report and Recommendations of the Securities and Exchange Commission, H. R. Doc. No. 92–231, pp. 7–8, 15, 22, 24 (1971); Exchange Act Release No. 11497 (1975); National Assn. of Securities Dealers, Inc., 12 S. E. C. 322, 329 n. 9 (1942). The net capital rule requires a broker to maintain a certain minimum ratio of net capital to aggregate indebtedness so that the broker's assets will always be sufficiently liquid to enable him to meet all of his current obligations. See 15 U. S. C. § 78o (c) (3); 17 CFR § 240.15c3–1 (1978).

A number of provisions of the 1934 Act provide the Commission with the authority needed to enforce the reporting requirements of § 17 (a) and the rules adopted thereunder. E. g., § 15 (b) (4), 15 U. S. C. § 78o (b) (4) (authorizes institution of administrative proceedings and imposition of sanctions against brokers for, inter alia, materially misleading statements in reports or applications required to be filed with the Commission); § 21, 15 U. S. C. § 78u (allows Commission to investigate and enjoin violations and to refer violations to the Attorney General for possible prosecution); § 32, 15 U. S. C. § 78ff (authorizes criminal sanctions for violations of statute and rules and for materially misleading statements in reports or documents required to be filed by the statute or rules); see n. 4, supra.

vide recompense after it has occurred. In short, there is no basis in the language of § 17 (a) for inferring that a civil cause of action for damages lay in favor of anyone. *Cort* v. *Ash,* 422 U. S., at 79.

As the Court of Appeals recognized, the legislative history of the 1934 Act is entirely silent on the question whether a private right of action for damages should or should not be available under § 17 (a) in the circumstances of this case. 592 F. 2d, at 622. SIPC and the Trustee nevertheless argue that because Congress did not express an intent to deny a private cause of action under § 17 (a), this Court should infer one. But implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best. See *Santa Clara Pueblo* v. *Martinez,* 436 U. S. 49, 64 (1978). And where, as here, the plain language of the provision weighs against implication of a private remedy, the fact that there is no suggestion whatsoever in the legislative history that § 17 (a) may give rise to suits for damages reinforces our decision not to find such a right of action implicit within the section. See *Cort* v. *Ash, supra,* at 82–84; cf. *Securities Investor Protection Corp.* v. *Barbour,* 421 U. S. 412 (1975); *Amtrak,* 414 U. S. 453 (1974); *T. I. M. E. Inc.* v. *United States,* 359 U. S. 464 (1959).[11]

Further justification for our decision not to imply the private remedy that SIPC and the Trustee seek to establish may be found in the statutory scheme of which § 17 (a) is a part. First, § 17 (a) is flanked by provisions of the 1934

---

[11] What legislative history there is of § 17 (a) simply confirms our belief that § 17 (a) was intended solely to be an integral part of a system of preventative reporting and monitoring, and not to provide remedies to customers for losses after liquidation. S. Rep. No. 792, 73d Cong., 2d Sess., 13, 21 (1934); H. R. Rep. No. 1383, 73d Cong., 2d Sess., 25 (1934); Hearing on H. R. 7852 et al. before the House Committee on Interstate and Foreign Commerce, 73d Cong., 2d Sess., 22, 225–226 (1934). See also S. Rep. No. 94–75, p. 119 (1975) (legislative history of the 1975 amendments to § 17).

Act that explicitly grant private causes of action. § 16 (b), 15 U. S. C. § 78p (b); § 18 (a), 15 U. S. C. § 78r (a). Section 9 (e) of the 1934 Act also expressly provides a private right of action. 15 U. S. C. § 78i (e). See also § 20, 15 U. S. C. § 78t. Obviously, then, when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly. *Blue Chip Stamps* v. *Manor Drug Stores*, 421 U. S. 723, 734 (1975); see *Amtrak, supra,* at 458; *T. I. M. E. Inc.* v. *United States, supra,* at 471.

Second, § 18 (a) creates a private cause of action against persons, such as accountants, who "make or cause to be made" materially misleading statements in any reports or other documents filed with the Commission, although the cause of action is limited to persons who, in reliance on the statements, purchased or sold a security whose price was affected by the statements.[12] 15 U. S. C. § 78r (a); see *Ernst & Ernst* v. *Hochfelder,* 425 U. S., at 211 n. 31; *Blue Chip Stamps* v. *Manor Drug Stores, supra,* at 736. Since SIPC and the Trustee do not allege that the Weis customers purchased

---

[12] Section 18 (a), as set forth in 15 U. S. C. § 78r (a), provides:
"Liability for misleading statements

"(a) Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading. A person seeking to enforce such liability may sue at law or in equity in any court of competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant."

or sold securities in reliance on the § 17 (a) reports at issue, they cannot sue Touche Ross under § 18 (a).[13]   Instead, their claim is that the Weis customers did not get the enforcement action they would have received if the § 17 (a) reports had been accurate.[14]   SIPC and the Trustee argue that § 18 (a) cannot provide the exclusive remedy for misstatements made in § 17 (a) reports because the cause of action created by § 18 (a) is expressly limited to purchasers and sellers.   They assert that Congress could not have intended in § 18 (a) to deprive customers, such as those whom they seek to represent, of a cause of action for misstatements contained in § 17 (a) reports.

There is evidence to support the view that § 18 (a) was intended to provide the exclusive remedy for misstatements contained in any reports filed with the Commission, including

---

[13] In another action arising out of the Weis financial collapse, the District Court has sustained a § 18 (a) claim against Touche Ross by a bank that allegedly purchased securities of Weis in reliance upon the § 17 (a) reports involved in this case.   *Exchange National Bank* v. *Touche Ross & Co.,* '75 Civ. 916 (SDNY); see 592 F. 2d, at 631 n. 5 (Mulligan, J., dissenting).   And in a case related to the instant case, the customers of Weis brought a class action against Touche Ross under § 18 (a), claiming, *inter alia,* that Touche Ross violated Commission Rule 17a–5, 17 CFR § 240.17a–5 (1972).   The District Court in that case dismissed the complaint on the ground that the plaintiffs did not meet the purchaser-seller requirement of § 18 (a) and thus could not maintain an action under that section.   *Rich* v. *Touche Ross & Co.,* 415 F. Supp. 95, 102–104 (SDNY 1976).   We express no view as to the correctness of either of these rulings.

[14] For example, the complaint alleges:

"Weis' 1973 forced liquidation under [SIPA] would not have become necessary, and most if not all of Weis' assets and its good will as a going concern could have been preserved by a number of means including [infusion of capital or merger with another firm] . . . .   Moreover, if a liquidation of Weis had become necessary as the result of . . . truthful reporting, such liquidation could have occurred at the end of Weis' 1972 fiscal year, when its assets were greater and the aggregate of its liabilities was lower than a year later."   App. 8–9.

those filed pursuant to § 17 (a).[15]  Certainly, SIPC and the Trustee have pointed to no evidence of a legislative intent to except § 17 (a) reports from § 18 (a)'s purview.  Cf. *Securities Investor Protection Corp.,* 421 U. S., at 419–420; *Amtrak,* 414 U. S., at 458.  But we need not decide whether Congress expressly intended § 18 (a) to provide the exclusive remedy for misstatements contained in § 17 (a) reports.  For where the principal express civil remedy for misstatements in reports created by Congress contemporaneously with the passage of § 17 (a) is by its terms limited to purchasers and sellers of securities, we are extremely reluctant to imply a cause of action in § 17 (a) that is significantly broader than the remedy that Congress chose to provide.  *Blue Chip Stamps* v. *Manor Drug Stores, supra,* at 735–736; see *Ernst & Ernst* v. *Hochfelder, supra,* at 210; *Securities Investor Protection Corp.* v. *Barbour, supra,* at 421–423; *Amtrak, supra,* at 458; cf. *T. I. M. E. Inc.* v. *United States,* 359 U. S., at 471.[16]

---

[15] For example, Senator Fletcher in introducing the bill that formed the basis for the 1934 Act, stated that "Section [18] imposes civil liability for false or misleading statements *in any of the reports* or records required under this act."  78 Cong. Rec. 2271 (1934) (emphasis added).  Richard Whitney, President of the New York Stock Exchange, testified at length regarding the 1934 Act proposals.  In testimony before the Senate Committee on Banking and Currency, he indicated his understanding that § 18 (a) liability extended to "persons transacting business in securities." Hearings on S. Res. 84 et al. before the Senate Committee on Banking and Currency, 73d Cong., 1st Sess., pt. 15, p. 6638 (1934).

[16] Touche Ross insists that the existence of SIPA also is relevant to the question whether to imply a private right of action in § 17 (a).  Congress specifically enacted SIPA in 1970 to afford customers of broker-dealers, such as Weis' customers, protection against losses they might incur as a result of the financial failure of their broker-dealer.  SIPA established a comprehensive plan of insurance for customers of brokerage firms.  See n. 5, *supra.*  And recently, Congress has increased the amounts by which customer accounts are insured to $40,000 for cash claims and $100,000 for cash and securities claims.  Securities Investor Protection Act Amendments of 1978, § 9, 92 Stat. 265, 15 U. S. C. § 78fff-3 (1976 ed., Supp. III).  Touche Ross asserts that there is no indication in the legislative

SIPC and the Trustee urge, and the Court of Appeals agreed, that the analysis should not stop here. Relying on the factors set forth in *Cort* v. *Ash,* 422 U. S., at 78, they assert that we also must consider whether an implied private remedy is necessary to "effectuate the purpose of the section" and whether the cause of action is one traditionally relegated to state law. SIPC and the Trustee contend that implication of a private remedy is essential to the goals of § 17 (a) and that enforcement of § 17 (a) is properly a matter of federal, not state, concern. Brief for Respondent Redington 30–35; Brief for Respondent SIPC 42–52. We need not reach the merits of the arguments concerning the "necessity" of implying a private remedy and the proper forum for enforcement of the rights asserted by SIPC and the Trustee, for we believe such inquiries have little relevance to the decision of this case. It is true that in *Cort* v. *Ash,* the Court set forth four factors that it considered "relevant" in determining whether a private remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in *Cort*—the language and focus of the statute, its

---

history of SIPA or its amendments that Congress thought the 1934 Act contained a remedy for customers of insolvent brokerage firms. Brief for Petitioner 62 n. 37; Reply Brief for Petitioner 11–12. It claims that Congress believed it was " 'filling a regulatory void' " when it passed SIPA. *Id.,* at 12; see S. Rep. No. 91–1218, p. 3 (1970). Given the fact that our task is to discern the intent of Congress when it enacted § 17 (a) in 1934, we doubt the relevance of SIPA to our inquiry. And even if the 91st Congress had believed that there was an implied right of action under § 17 (a), SIPA still would have been needed to protect customers in situations where there was no fraud or where the fraud was committed only by the broker, who, because of its insolvency, would probably be judgment proof. Accordingly, our decision not to infer a right of action in favor of brokerage customers from § 17 (a) is not influenced by the existence of SIPA.

legislative history, and its purpose, see 422 U. S., at 78—are ones traditionally relied upon in determining legislative intent. Here, the statute by its terms grants no private rights to any identifiable class and proscribes no conduct as unlawful. And the parties as well as the Court of Appeals agree that the legislative history of the 1934 Act simply does not speak to the issue of private remedies under § 17 (a). At least in such a case as this, the inquiry ends there: The question whether Congress, either expressly or by implication, intended to create a private right of action, has been definitely answered in the negative.

Finally, SIPA and the Trustee argue that our decision in *J. I. Case Co.* v. *Borak,* 377 U. S. 426 (1964), requires implication of a private cause of action under § 17 (a). In *Borak,* the Court found in § 14 (a) of the 1934 Act, 15 U. S. C. § 78n (a), an implied cause of action for damages in favor of shareholders for losses resulting from deceptive proxy solicitations in violation of § 14 (a). SIPC and the Trustee emphasize language in *Borak* that discusses the remedial purposes of the 1934 Act and § 27 of the Act, which, *inter alia,* grants to federal district courts the exclusive jurisdiction of violations of the Act and suits to enforce any liability or duty created by the Act or the rules and regulations thereunder.[17] They argue that

---

[17] Section 27, as set forth in 15 U. S. C. § 78aa, provides as follows:

"The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever

Touche Ross has breached its duties under § 17 (a) and the rules adopted thereunder and that in view of § 27 and of the remedial purposes of the 1934 Act, federal courts should provide a damages remedy for the breach.[18]

The reliance of SIPC and the Trustee on § 27 is misplaced. Section 27 grants jurisdiction to the federal courts and provides for venue and service of process. It creates no cause of action of its own force and effect; it imposes no liabilities. The source of plaintiffs' rights must be found, if at all, in the substantive provisions of the 1934 Act which they seek to enforce, not in the jurisdictional provision. See *Securities Investor Protection Corp.* v. *Barbour,* 421 U. S., at 424. The Court in *Borak* found a private cause of action implicit in § 14 (a). See *Cannon* v. *University of Chicago,* 441 U. S., at 690–693, n. 13; *Piper* v. *Chris-Craft Industries, Inc.,* 430 U. S. at 25; *Allen* v. *State Board of Elections,* 393 U. S., at 557. We do not now question the actual holding of that case, but we decline to read the opinion so broadly that virtually every provision of the securities Acts gives rise to an implied private cause of action. *E. g., Piper* v. *Chris-Craft Industries, Inc., supra.*[19]

---

the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, and 1292 of Title 28. No costs shall be assessed for or against the Commission in any proceeding under this chapter brought by or against it in the Supreme Court or such other courts."

[18] SIPC and the Trustee also appear to suggest that the rules adopted under § 17 (a) can themselves provide the source of an implied damages remedy even if § 17 (a) itself cannot. See Brief for Respondent SIPC 27–31; Brief for Respondent Redington 25–35; n. 3, *supra.* It suffices to say, however, that the language of the statute and not the rules must control. *Ernst & Ernst* v. *Hochfelder,* 425 U. S., at 214; *Santa Fe Industries, Inc.* v. *Green,* 430 U. S. 462, 472 (1977).

[19] We also have found implicit within § 10 (b) of the 1934 Act a private cause of action for damages. See *Superintendent of Insurance* v. *Bankers Life & Cas. Co.,* 404 U. S. 6, 13 n. 9 (1971). But we recently have stated that in *Superintendent* this Court simply explicitly acquiesced in the 25-

The invocation of the "remedial purposes" of the 1934 Act is similarly unavailing. Only last Term, we emphasized that generalized references to the "remedial purposes" of the 1934 Act will not justify reading a provision "more broadly than its language and the statutory scheme reasonably permit." *SEC* v. *Sloan,* 436 U. S. 103, 116 (1978); see *Ernst & Ernst* v. *Hochfelder,* 425 U. S., at 200. Certainly, the mere fact that § 17 (a) was designed to provide protection for brokers' customers does not require the implication of a private damages action in their behalf. *Cannon* v. *University of Chicago, supra,* at 688, and n. 9; *Securities Investor Protection Corp.* v. *Barbour, supra,* at 421. To the extent our analysis in today's decision differs from that of the Court in *Borak,* it suffices to say that in a series of cases since *Borak* we have adhered to a stricter standard for the implication of private causes of action, and we follow that stricter standard today. *Cannon* v. *University of Chicago, supra,* at 688–709. The ultimate question is one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law.

---

year-old acceptance by the lower federal courts of an implied action under § 10 (b). *Cannon* v. *University of Chicago,* 441 U. S., at 690–693, n. 13; see *Ernst & Ernst* v. *Hochfelder, supra,* at 196; *Blue Chip Stamps* v. *Manor Drug Stores,* 421 U. S. 723, 730 (1975). There is no similar history of longstanding lower-court interpretation in this case. Indeed, only one other court in the 45-year history of the 1934 Act has held that a private cause of action for damages is available under § 17 (a). *Hawkins* v. *Merrill, Lynch, Pierce, Fenner & Beane,* 85 F. Supp. 104, 124 (WD Ark. 1949). In *Hawkins,* a national brokerage firm was held liable for damages under § 17 (a) to a defalcating correspondent's customers for improperly advising the correspondent, who was found to be controlled by the national firm, to describe its business in such a way as to avoid filing certified financial statements with the Commission under § 17 (a). Citing *Kardon* v. *National Gypsum Co.,* 69 F. Supp. 512 (ED Pa. 1946), the District Court simply stated that violation of any of the provisions of the 1934 Act would give rise to a civil suit for damages on the part of the one injured, and that the defendants did not contend to the contrary. 85 F. Supp., at 121.

## III

SIPC and the Trustee contend that the result we reach sanctions injustice. But even if that were the case, the argument is made in the wrong forum, for we are not at liberty to legislate. If there is to be a federal damages remedy under these circumstances, Congress must provide it. "[I]t is not for us to fill any *hiatus* Congress has left in this area." *Wheeldin* v. *Wheeler,* 373 U. S. 647, 652 (1963). Obviously, nothing we have said prevents Congress from creating a private right of action on behalf of brokerage firm customers for losses arising from misstatements contained in § 17 (a) reports. But if Congress intends those customers to have such a federal right of action, it is well aware of how it may effectuate that intent.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE POWELL took no part in the consideration or decision of this case.

MR. JUSTICE BRENNAN, concurring.

I join the Court's opinion. The Court of Appeals implied a cause of action for damages under § 17 (a) of the Securities Exchange Act of 1934, 15 U. S. C. § 78q (a), in favor of respondents, who purport to represent customers of a bankrupt brokerage firm, against petitioner accounting firm, which allegedly injured those customers by improperly preparing and certifying the reports on the brokerage firm required by § 17 (a) and the rules promulgated thereunder. Under the tests established in our prior cases, no cause of action should be implied for respondents under § 17 (a). Although analyses of the several factors outlined in *Cort* v. *Ash,* 422 U. S. 66 (1975), may often overlap, I agree that when, as here, a statute clearly

does not "create a federal right in favor of the plaintiff," *id.,* at 78, *i. e.,* when the plaintiff is not " 'one of the class for whose *especial* benefit the statute was enacted,' " *ibid.,* quoting *Texas & Pacific R. Co.* v. *Rigsby,* 241 U. S. 33, 39 (1916), and when there is also in the legislative history no "indication of legislative intent, explicit or implicit, . . . to create such a remedy," 422 U. S., at 78, the remaining two *Cort* factors cannot by themselves be a basis for implying a right of action.

MR. JUSTICE MARSHALL, dissenting.

In determining whether to imply a private cause of action for damages under a statute that does not expressly authorize such a remedy, this Court has considered four factors:

> "First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,'—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" *Cort* v. *Ash,* 422 U. S. 66, 78 (1975) (citations omitted).

Applying these factors, I believe respondents are entitled to bring an action against accountants who have allegedly breached duties imposed under § 17 (a) of the Securities Exchange Act of 1934, 15 U. S. C. § 78q (a).

Since respondents seek relief on behalf of brokerage firm customers, the first inquiry is whether those customers are the intended beneficiaries of the regulatory scheme. Under § 17 (a), brokers must file such reports "as the [SEC], by rule, prescribes as necessary or appropriate . . . *for the protection of investors."* 15 U. S. C. § 78q (a)(1) (emphasis added). Cf.

*J. I. Case Co.* v. *Borak,* 377 U. S. 426, 432 (1964). Pursuant to this authority, the SEC requires brokers to provide a battery of financial statements, and directs independent accountants to verify the brokers' reports. 17 CFR § 240.17a–5 (1978); see also *ante,* at 563–564, n. 3. The purpose of these requirements, as the Commission has consistently emphasized, is to enable regulators to "monitor the financial health of brokerage firms and protect customers from the risks involved in leaving their cash and securities with broker-dealers." *Ante,* at 570.[1] In addition, at the time of the events giving rise to this suit, the rules implementing § 17 mandated that brokers disclose to customers whether an accountant's audit had revealed any "material inadequacies" in financial procedures. 37 Fed. Reg. 14608 (1972). Thus, it is clear that brokerage firm customers are the "favored wards" of § 17, 592 F. 2d 617, 623 (CA2 1978), and that the initial test of *Cort* v. *Ash* is satisfied here.[2]

With respect to the second *Cort* factor, the legislative history does not explicitly address the availability of a damages remedy under § 17. The majority, however, discerns an intent to deny private remedies from two aspects of the statutory scheme. Because unrelated sections in the 1934 Act expressly grant private rights of action for violation of their terms, the Court suggests that Congress would have made such provision under § 17 had it wished to do so. But as we noted recently in *Cannon* v. *University of Chicago,* 441 U. S.

---

[1] See SEC, Study of Unsafe and Unsound Practices of Brokers and Dealers, H. R. Doc. No. 92–231, p. 24 (1971); Exchange Act Release No. 8024 (1967); Exchange Act Release No. 11497 (1975); see also 592 F. 2d 617, 621–622 (CA2 1978).

[2] In the Court's view, it is inappropriate to imply a private remedy because § 17 (a) "neither confers rights on private parties nor proscribes any conduct as unlawful." *Ante,* at 569. But § 17 does impose duties for the benefit of private parties; in that sense, it both generates expectations, on which customers may appropriately rely, that those duties will be performed, and prohibits conduct inconsistent with the obligations created.

677, 711 (1979), "that other provisions of a complex statutory scheme create express remedies has not been accepted as a sufficient reason for refusing to imply an otherwise appropriate remedy under a separate section." The Court finds a further indication of congressional intent in the interaction between §§ 17 and 18 of the 1934 Act. Section 18 (a), 15 U. S. C. § 78r (a), affords an express remedy for misstatements in reports filed with the Commission, apparently including reports required by § 17, but limits relief to purchasers or sellers of securities whose price was affected by the misstatement. In light of this limitation, the majority reasons, we should not imply a remedy under § 17 which embraces a broader class of plaintiffs. However, § 18 pertains to investors who are injured in the course of securities transactions, while § 17 is concerned exclusively with brokerage firm customers who may be injured by a broker's insolvency. Given this divergence in focus, § 18 does not reflect an intent to restrict the remedies available under § 17. Indeed, since false reports regarding a broker's financial condition would not affect the price of securities held by the broker's customers, § 18 would provide these persons with no remedy at all. I am unwilling to assume that "Congress simultaneously sought to protect a class and deprived [it] of the means of protection." 592 F. 2d, at 623.

A cause of action for damages here is also consistent with the underlying purposes of the legislative scheme. Because the SEC lacks the resources to audit all the documents that brokers file, it must rely on certification by accountants. See *J. I. Case Co.* v. *Borak, supra,* at 432; *Allen* v. *State Board of Elections,* 393 U. S. 544, 556 (1969); see also 592 F. 2d, at 623 n. 12. Implying a private right of action would both facilitate the SEC's enforcement efforts and provide an incentive for accountants to perform their certification functions properly.

Finally, enforcement of the 1934 Act's reporting provisions is plainly not a matter of traditional state concern, but rather

relates solely to the effectiveness of federal statutory requirements. And, as the Court of Appeals held, since the problems caused by broker insolvencies are national in scope, so too must be the standards governing financial disclosure. *Id.,* at 623.

In sum, straightforward application of the four *Cort* factors compels affirmance of the judgment below. Because the Court misapplies this precedent and disregards the evident purpose of § 17, I respectfully dissent.