Thomas BASELSKI and Antoinette Baselski, Plaintiffs,

v.

PAINE, WEBBER, JACKSON & CURTIS, INC., a Delaware Corporation, and Jack Moses, Defendants.

No. 80C3157.

United States District Court, N. D. Illinois, E. D.

May 20, 1981.

---

Daniel E. Beederman and Robert M. Tarnoff, Prince, Schoenberg, Fisher & Newman, Ltd., Chicago, Ill., for plaintiffs.

Michael B. Roche, Hubachek & Kelly, Ltd., Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

The motion at bar involves purported violations of the Securities Act of 1933, 15 U.S.C. § 77 *et seq.*, and the Securities Exchange Act of 1934, 15 U.S.C. § 78 *et seq.* In addition, the plaintiffs allege various breaches of the defendants' common law duties. Subject matter jurisdiction of the federal claims is founded upon Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a), and Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. Jurisdiction of the state claims is founded upon the doctrine of pendent jurisdiction.

The plaintiffs, Thomas and Antoinette Baselski, bring this action against defendant Paine, Webber, Jackson & Curtis, Inc. ("Paine Webber"), and its agent, defendant Jack Moses. Counts I through IV of the

plaintiffs' thirty-seven page complaint allege violations of Sections 10(b), 15(c)(1) and 15(c)(2) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j and 78o, and Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q. Counts V and VI are founded upon alleged violations of Rules 405 and 342(a) of the New York Stock Exchange, these rules promulgated pursuant to the authority granted in Sections 6 and 19 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78f and 78s. In addition, Counts VII through IX allege various breaches of the defendants' common law fiduciary duties and charge defendants with the tort of misrepresentation.

Defendants have moved to dismiss the plaintiffs' amended complaint on various grounds. Defendants contend that many of the transactions complained of are barred by the applicable period of limitations and that plaintiffs have failed to allege facts sufficient to invoke the equitable tolling doctrine. In addition, defendants move for dismissal of Counts I through IV for failure to plead fraud with the particularity required by Rule 9(b), Fed.R.Civ.P., dismissal of Counts V and VI for failure to state a claim upon which relief may be granted, and defendants request that the state claims be severed and referred to arbitration pursuant to the investment agreement between the parties.

The plaintiffs have alleged in Count I of their complaint that they began trading with the defendants in 1972, and that these activities were conducted in accordance with an oral agreement. At this time, the plaintiffs informed the defendants that their investment objectives were conservative and that they wished to avoid speculative transactions. The plaintiffs continued to trade under this arrangement through early 1974. In February, 1974, in reliance upon the advice and recommendation of defendant Jack Moses, the plaintiffs executed an "Option Trading Agreement" and "Customer Agreement" with defendant Paine Webber. At this time plaintiffs again reiterated their conservative investment objectives.

In connection with the opening of and subsequent trading in this account, the plaintiffs allege that defendant Jack Moses falsely informed them that defendants would: deal fairly with them; utilize expert investment counseling in the management of their account; implement the plaintiffs' stated investment objectives, and further advised that margin trading was suitable for this objective. The plaintiffs also allege that the defendants falsely stated that the turnover ratio in their account was normal, and that the amount of the defendants' commissions was also normal.

In addition, the plaintiffs have alleged that the defendants failed to disclose that margin trading exposed them to greater risks, additional capital investment, and that the defendants would liquidate stable income producing securities to meet margin calls. The plaintiffs further allege that the defendants failed to disclose that they would purchase and sell securities in excess of the amount authorized, that the defendants were managing their account more for their benefit than for the plaintiffs, and that the defendants would make substantial profit as a result of excessive trading.

Plaintiffs also allege that defendants, with intent to defraud, failed to follow the plaintiffs' stated investment instructions by recommending highly speculative securities, placing plaintiffs in option positions which were inconsistent with their investment objectives, and by recommending transactions without the benefit of adequate research or consideration of the plaintiffs' investment objectives.

The plaintiffs specifically allege that in August, 1978, defendant Jack Moses induced them to purchase stock in U V Industries, Inc. and that shortly thereafter defendant converted this stock into warrants of the same company. These securities were purchased in an amount in excess of that authorized by the plaintiffs, and the defendants failed to follow their express authorization to sell these securities. In addition, the plaintiffs contend that defendant Jack Moses fraudulently induced them to purchase debentures of Marketing Con-

cepts, Inc., an over the counter stock in which defendant had a pecuniary interest.

At all times relevant to their complaint (1974 through 1978), the plaintiffs contend that they were naive and unsophisticated investors who placed complete trust and confidence in the defendants' investment expertise and that defendants were aware of their unsophistication and reliance. As a result of the foregoing acts, omissions, or misrepresentations, the plaintiffs claim $250,000 in damages.

Count II of their complaint incorporates by reference the foregoing and alleges that the defendants assumed *de facto* discretionary control over their account. In addition, the plaintiffs allege that the defendants fraudulently and intentionally bought and sold securities at an excessive rate, engaged in multiple trading in identical securities, and recommended that plaintiffs purchase and sell securities for the purpose of generating commissions. As a result of these transactions, defendants received commissions in excess of $81,000 and the plaintiffs suffered losses in excess of $250,000.

Count III of the complaint incorporates by reference the allegations of Count II and alleges that the defendants fraudulently induced the plaintiffs to purchase and sell over the counter securities, specifically Marketing Concepts, Inc. debentures in violation of Sections 15(c)(1) and 15(c)(2) of the Securities Exchange Act.

Count IV incorporates by reference the allegations of Count II and alleges that the defendants have violated Sections 17(a)(1), (2) and (3) of the Securities Act of 1933, and further alleges that the defendant Paine Webber was a "controlling person" within the meaning of Section 15 of the Securities Act of 1933.

Counts V and VI of the plaintiffs' complaint incorporate by reference all of the allegations of Count II. In addition, Count V alleges that defendant Jack Moses failed "to use diligence" in the supervision of the plaintiffs' account in contravention of New York Stock Exchange Rule 405. Count VI alleges that defendant Paine Webber failed to "reasonably supervise and control" the

activities of defendant Jack Moses in violation of New York Stock Exchange Rule 342(a).

Counts VII through IX, as previously set forth, charge defendants with violations of their fiduciary duties and the tort of misrepresentation. Because these claims will be severed and referred to arbitration, the pleadings contained therein will not be summarized.

### Motion to Strike and Dismiss Counts I through IV as Barred by the Statute of Limitations

This action commenced with the filing of the plaintiffs' original complaint on June 19, 1980. The transactions in controversy allegedly span the period from February 1974 through some undisclosed point in time in 1978. The parties agree that the applicable period of limitations is three years from the date of the allegedly fraudulent transaction. *See Parrent v. Midwest Rug Mills, Inc.*, 455 F.2d 123 (7th Cir. 1972). The parties further agree that accrual of the claim is subject to tolling by the "discovery rule." *See Hupp v. Gray*, 500 F.2d 993 (7th Cir. 1974). Defendants contend, however, that plaintiffs have failed to plead facts sufficient to invoke this equitable doctrine.

In *Parrent, supra*, the Seventh Circuit Court of Appeals recognized that the statute of limitations in a 10(b) action may be tolled by the equitable doctrine of fraudulent concealment, however, the plaintiff's ignorance of the fraud must not be a result of a lack of diligence on his part. Equally well established is the requirement that, in the event that the applicable period of time has elapsed, the plaintiff has the burden of showing that he exercised "reasonable care and diligence in seeking to learn facts which would disclose the fraud." *Hupp v. Gray*, 500 F.2d 993, 996 (7th Cir. 1974). Relevant to this inquiry is the relationship of the parties, the nature of the fraud alleged, the opportunity to discover the fraud and the subsequent actions of the defendant. *Morgan v. Koch*, 419 F.2d 993, 997 (7th Cir. 1969). When the plaintiff is in

possession of those facts which would place a reasonable person on notice of the fraud, the cause of action accrues and the period of limitations begins to run.

As previously noted, the transactions in controversy allegedly span the period from February, 1974 through 1978. Those transactions which occurred prior to June 19, 1977, three years prior to commencement of this action, are therefore barred on the face of the complaint in the absence of allegations asserting either active concealment, or the inability to discover the fraud despite diligence, and the date upon which the plaintiff became aware of the fraud. *Timmreck v. Munn*, 433 F.Supp. 396, 404 (N.D.Ill.1977).

■ In the present case, the plaintiffs have alleged their investment naivete, complete trust and repose placed in the defendants, and the defendants' active concealment of their fraud in response to their inquiries.[1] Given the nature of the fraudulent activity claimed, churning, and the alleged unsophistication of the plaintiffs, the court believes that the plaintiffs have plead facts sufficient to invoke the doctrine of equitable tolling. *Hupp v. Gray*, 500 F.2d 993 (7th Cir. 1974). This is especially true where, as in the present case, the defendants have an affirmative duty of disclosure. *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978).

For these reasons, the defendants' motion to dismiss Counts I through IV, as barred by the statute of limitations, is denied.

### Motion to Dismiss Counts I through IV for Failure to Plead Fraud with Particularity

The defendants have also moved to dismiss Counts I through IV of the plaintiffs' amended complaint for failure to plead fraud with particularity as required by Rule 9(b), Fed.R.Civ.P. The plaintiffs do not contest the applicability of this rule. *Tomera v. Galt*, 511 F.2d 504 (7th Cir. 1975); *Schaefer v. First Nat'l Bank of Lincoln-*

*wood*, 509 F.2d 1287, 1297 (7th Cir. 1975). They contend, however, that given the number of transactions at issue, their complaint has met this requirement.

■ The specificity requirements of Rule 9(b), Fed.R.Civ.P., have been imposed to ensure that the defendant has been apprised of the fraud claimed in a manner sufficient to permit the framing of adequate responsive pleadings. *Felton v. Walston*, 508 F.2d 557, 581 (2d Cir. 1974). This requirement must be read in conjunction with Rule 8, Fed.R.Civ.P., which requires a short and plain statement of the claim. *Tomera v. Galt, supra* at 508. Generally, a complaint is considered sufficient when it sets forth the time, place and substance of the allegedly false representations, as well as the identity of the individual making the representations, and what was allegedly obtained thereby. Wright & Miller, *Federal Practice and Procedure*: Civil § 1297. The sufficiency of a pleading under this rule also varies with the complexity of the transaction. When the transactions are numerous and take place over an extended period of time, less specificity is required. *Fulk v. Bagley*, 88 F.R.D. 153, Fed.Sec.L. Rep., (C.L.16), ¶ 97,640 (M.D.N.C.1980). For these reasons, the court believes that a complaint, complies with Rule 9(b), Fed.R. Civ.P., when the allegations provide the defendant with fair notice of the fraud claimed and, at the same time, evidences a reasonable belief on the part of the plaintiff that there is merit to the claim, *Fulk, supra*, 88 F.R.D. 153, Fed.Sec.L.Rep. (C.L.16) at ¶ 98,432.

■ In the present case, Counts I, III and IV sufficiently comport with the requirements of Rule 9(b), Fed.R.Civ.P. The complaint sets forth the time, place and contents of the allegedly false representations, as well as the identity of the individual who made them, and what was obtained thereby. These averments describe the

---

1. The plaintiffs have alleged that the defendants, at all times relevant, denied that their trading or commissions were excessive. A

simple allegation as to the date of discovery is preferred as this would clarify matters for the purpose of a responsive pleading.

"bare bones" of the allegedly fraudulent scheme. *Tomera v. Galt, supra* at 508.[2]

For this reason, the defendants' motion to dismiss will be denied as to Counts I, III, and IV.

In Count II of the amended complaint, the plaintiffs allege that defendants violated the Securities and Exchange Act by "churning" their options account through a series of unsuitable transactions.[3] The essence of a churning claim is not a particular transaction, it is the aggregation of transactions, allegedly excessive in number, judged in relation to the plaintiff's investment objectives and the market conditions at that time. *Fey v. Walston,* 493 F.2d 1036 (7th Cir. 1974). For this reason, it serves no useful purpose to require the plaintiffs to list with particularity every transaction relevant to their claim. However, to satisfy the specificity requirements of Rule 9(b), the complaint should, at a minimum, set forth a statement of fact which would permit a determination of either the turnover ratio of the account,[4] or the percentage of the account value paid in commissions.[5] *Vetter v. Shearson Hayden Stone, Inc.,* 481 F.Supp. 64, 66 (S.D.N.Y. 1979); *Salween Paper Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 79 F.R.D. 130, 135 (S.D.N.Y.1978).

Measured against this requirement, Count II fails to plead churning with the requisite specificity. The complaint fails to allege the account value and therefore the information provided is insufficient to calculate the defendants' commissions as a percentage of the account equity. Nor does the complaint allege facts from which the turnover ratio could be ascertained. For these reasons, Count II of the complaint is dismissed.

### Motion to Dismiss Counts V and VI for Failure to State a Claim Upon Which Relief May Be Granted

Counts V and VI of the amended complaint charges violations of Rules 405[6] and

---

**2.** Defendants have focused their objection to these counts on the plaintiffs' failure to identify each transaction at issue. The court finds that such a requirement would be unduly burdensome when all of the transactions throughout this five year period are allegedly tainted with the defendants' fraudulent conduct. While it is true that one of the purposes of Rule 9(b), Fed.R.Civ.P., is to deter frivolous claims, this purpose can be accomplished through the court's inherent power to tax attorneys fees where the litigation is commenced in bad faith. *Roadway Express v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980); *Driscoll v. Oppenheimer & Co., Inc.,* 500 F.Supp. 174 (N.D.Ill.1980).

**3.** "The 'churning' of a securities account occurs when a broker acting in his own interests and against those of the customer, induces transactions in the customer's account which are excessive in size and frequency in light of the character of the account." Note, Churning by Securities Dealers, 80 Harv.L.Rev. 869 (1967).

**4.** The turnover ratio of the account is "the ratio of the total cost of the purchases made for the account during a given period of time to the amount invested." Churning, *supra* at 875.

**5.** Although there is no standard for determining whether a dealer's profits are excessive, the comparison is relevant "because the nub of the offense in overtrading consists of the taking of repeated profits on a number of transactions conferring no advantage upon the customer." Churning, *supra* at 877.

**6.** New York Stock Exchange Rule 405 provides:

a. Every member or organization is required through a general partner or an officer who is a holder of voting stock to

1. Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization, and every person holding power of attorney over an account accepted or carried by such organization;

2. Supervise diligently all accounts handled by registered representatives of the organization;

3. Specifically approve the opening of an account prior to or promptly after the completion of any transaction for the account of or with the customer, provided, however, that in the case of branch offices, the opening of an account for a customer may be approved by the manager of such branch office but the action of such branch office manager shall within a reasonable period of time be approved by a general partner or an officer who is a holder of voting stock in the organization. The member, general partner, or officer approving the opening of the accounts shall, prior to giving his approval, be person-

342(a)[7] of the New York Stock Exchange and the plaintiffs seek recovery in these counts on the theory of a right of action implied by Sections 6 and 19 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78f and 78s. The defendants have moved to dismiss these counts for failure to state a claim upon which relief may be granted, contesting the existence of an implied right of action under these sections. *See generally Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). The plaintiffs, relying upon *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 410 F.2d 135 (7th Cir. 1969), contend that Counts V and VI present legally sufficient claims.

In *Buttrey, supra*, the Seventh Circuit Court of Appeals recognized an implied right of action for the fraudulent violation of Rule 405 of the New York Stock Exchange. In reaching this conclusion, the court found relevant to this inquiry the policy of promoting private enforcement as a supplement to Commission action, the jurisdictional provision of the Act, Section 27, 15 U.S.C. § 78aa, providing for enforcement of "any liability or duty created by this chapter or the rules thereunder," and the fact that the alleged breaches of this duty were tantamount to the perpetration of a fraud.[8] *Buttrey, supra* at 142. The continued validity of this construction of the Act has been the subject of reconsideration.

*See Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980).

 In the case at bar, however, notwithstanding the question of whether an implied right of action exists under Sections 6 and 19 of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78f and 78s, the plaintiffs' amended complaint fails to allege that the defendants fraudulently violated Rule 405 and Rule 342(a) of the New York Stock Exchange. For this reason, Counts V and VI fail to state claims upon which relief may be granted. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Assuming arguendo that the plaintiffs had pled a fraudulent violation of these rules, these counts would also be dismissed for failing to state a claim upon which relief could be granted, as the court does not believe that Sections 6 and 19 of the Act create an implied right of action. *Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980).

### Motion to Sever and Compel Arbitration of the State Claims

The defendants have also moved to sever and compel arbitration of Counts VII through IX pursuant to an agreement by the parties to arbitrate claims arising out of their broker-customer relationship.[9] The

---

ally informed as to the essential facts relative to the customer and to the nature of the proposed account and shall indicate his approval in writing on a document which is a part of the permanent records of his office or organization.

**7.** New York Stock Exchange Rule 342(a) provides:

a. Each office, department, or business activity of a member or member organization (including foreign incorporated branch offices) shall be under the supervision and control of the member or member organization establishing it and of the personnel delegated such authority and responsibility.

b. The person in charge of a group of employees shall reasonably discharge his duties and obligations in connection with supervision and control of the activities of those employees

related to the business of their employer in compliance with securities laws and regulations.

**8.** At the time that this opinion was written, proof of fraudulent intent was not considered a requirement in actions for violations of the Act. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

**9.** "Any controversy between us arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the American Arbitration Association, or the Arbitration Committee of the New York Stock Exchange, as I may elect. I authorize you if I do not make such election by registered mail addressed to you at your main office within fif-

plaintiffs contend that the arbitration clause at issue is unconscionable, and that enforcement of this clause would result in a forfeiture of their "right" to pursue punitive damages. *See Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (Ct.App.1976).

 The court is not persuaded that the parties' agreement to arbitrate their state claims is unconscionable. *Charles O. Finley & Co., Inc. v. Kuhn,* 569 F.2d 527 (7th Cir. 1978). Nor is the court persuaded that submission of these claims to arbitration would result in an "unknowing forfeiture" of the plaintiffs' "right" to pursue punitive damages. The parties have agreed in their "Customer Agreement" that their contractual relationship will be governed by the law of the State of New York. Thus, the plaintiffs have contractually waived their "right" to punitive damages. For these reasons, the plaintiffs' state claims will be severed and submitted to arbitration, however, arbitration will be stayed pending the resolution of the plaintiffs' federal claims. *Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 558 F.2d 831 (7th Cir. 1977).

CONCLUSION

In summary, for the aforementioned reasons, the following is ordered:

(1) The defendants' motion to dismiss Counts I through IV, as barred by the applicable period of limitations, is denied.

(2) The defendants' motion to dismiss Counts I, III and IV for failure to plead fraud with particularity is denied, however, as to Count II of the amended complaint, this motion is granted. This dismissal is without prejudice and the plaintiffs may amend this count by June 17, 1981, if possible, to remedy the defects noted.

(3) The defendants' motion to dismiss Counts V and VI for failure to state a claim upon which relief may be granted is granted.

(4) The defendants' motion to sever the state claims and stay arbitration is granted.

IT IS SO ORDERED.

teen (15) days after receipt of notification from you requesting such election, to make such election in my behalf. Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction."