**J.E. DAVIDSON, et al., Plaintiffs,**

v.

**MARTIN MARIETTA ENERGY SYSTEMS, INC., Defendant.**

**No. Civ. 3–86–402.**

United States District Court, E.D. Tennessee, N.D.

Sept. 17, 1990.

Cecil D. Branstetter, R. Jan Jennings, Branstetter, Kilgore, Stranch & Jennings, Nashville, Tenn., for plaintiffs.

E.H. Rayson, Kramer, Rayson, Leake, Rodgers & Morgan, Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

JARVIS, Chief Judge.

This is an action for alleged negligence in failing to implement a federal regulation and for breach of contract in refusing to arbitrate a dispute under a collective bar-gaining agreement. Currently pending is the plaintiffs' motion for partial summary judgment [Court File # 5] and defendant's motion for summary judgment on all issues [Court File # 13]. For the reasons that follow, plaintiffs' motion will be denied and defendant's motion will be granted.

## I.

### Facts

The relevant facts are not in dispute. Defendant Martin Marietta Energy Systems, Inc. (Martin Marietta) manages, operates, and maintains the Government-owned Y–12 Plant and Oak Ridge National Laboratory (ORNL) in Oak Ridge, Tennessee, pursuant to contract with the United States Department of Energy (DOE). The work at the Y–12 Plant includes the fabrication and assembly of components of nuclear weapons and related services. ORNL is a major research and development center conducting research on energy-related technologies including nuclear research and development. Because of the nature of the work performed, both institutions are provided with a high degree of physical security. This security is supplied in part by the presence of armed security inspectors provided by private contractors such as Martin Marietta.

Pursuant to its statutory authority under the Atomic Energy Act, DOE has issued extensive regulations and orders dealing with the security of these facilities. By the terms of its contract with DOE, Martin Marietta is expressly required "to conform to all security regulations and requirements of DOE."

The plaintiffs in this case are former security inspectors employed by Martin Marietta who have been demoted to the position of guard. Plaintiffs' local union is a party to a collective bargaining agreement with Martin Marietta. The collective bargaining agreement defines grievances as "complaints, disputes, or misunderstandings involving questions of interpretation or application of any clause of this Contract." Collective Bargaining Agreement, Article XV, Section 3. The agreement fur-

ther limits arbitration to three types of grievances, those involving either the "discharge or suspension of an employee, or the interpretation of provisions of this Contract, or an alleged violation of the Contract." Collective Bargaining Agreement, Article XVI, Section 1. The collective bargaining agreement also contains "Administrative Understanding No. 3", which deals specifically with the contractual rights of "employees who fail to qualify as Security Inspectors because of a failure to meet necessary standards (physical fitness, medical, firearm) ..." under 10 C.F.R. Part 1046. Paragraph 5 of this Understanding states that "the DOE standards referred to in this Understanding [10 C.F.R. Part 1046] ... are not subject to the grievance procedure or arbitration."

As early as January 31, 1978, DOE published physical fitness requirements for both security inspectors (armed protective force personnel) and guards (unarmed protective force personnel). These initial standards were withdrawn in March, 1980. DOE subsequently retained Professional Management Associates (PMA) to develop and validate physical fitness qualifications for security inspectors. On September 30, 1982, PMA submitted the results of its study to DOE. On May 14, 1984, DOE issued a notice of proposed rulemaking (49 Fed.Reg. 20436) setting forth proposed physical fitness standards for contractor-employed protective force personnel. During the rulemaking process, DOE held hearings in four cities, including Oak Ridge, and accepted written comments until June 13, 1984. During the process, DOE solicited comments from union officials representing the plaintiffs.

On November 23, 1984, DOE published final regulations adopting medical and physical fitness standards. 10 C.F.R. Part 1046. The regulations "require incumbent and applicant protective force personnel at Government-owned facilities to meet certain medical and physical fitness standards, including professionally developed and validated physical fitness standards for persons authorized to carry firearms pursuant to 42 U.S.C. § 2201(k) ..." (49 Fed.Reg. 46097). The regulations further provide that DOE contractors, including Martin Marietta, "shall not employ as protective force personnel any individual who fails to meet the applicable medical and physical fitness qualification standards ..." contained therein "twelve months from the effective date of regulation." *See* 10 C.F.R. § 1046.11(a) and (b). In addition, 10 C.F.R. § 1046.12 provides for the creation of physical fitness training programs for incumbent security inspectors as follows:

(a) Beginning January 24, 1985, each incumbent security inspector, who has not met the applicable physical fitness qualification standard, shall participate in a DOE approved physical fitness training program. Once an incumbent security inspector has begun a physical fitness training program, it must be completed before the security inspector may take the applicable physical fitness qualification standards test. Once a physical fitness training program is completed, an incumbent security inspector has thirty (30) days to meet the applicable physical fitness qualification standards.

Effective December 24, 1985, the DOE regulations prohibited Martin Marietta from employing anyone as a security inspector who had not met the following standard:

*Offensive Combative Standard:* One mile run in 8 and ½ minutes or less and forty yard prone-to-running dash in eight seconds or less.

*Defensive Combative Standard:* .5 mile run with a maximum qualifying time of 4 minutes 40 seconds; a forty yard prone-to-running dash in 8.5 seconds or less.

10 C.F.R. Part 1046, Appendix A to Subpart B, Section F(1)(2). Plaintiffs in this case were "Defensive Combative" personnel and were therefore subject to the less stringent requirements. These physical fitness standards were applicable to all security inspectors regardless of age, sex or any other classification such as handicap status.

As required by its contract with DOE, Martin Marietta put these standards into

effect at the Y–12 Plant and at ORNL. Martin Marietta first advised plaintiffs' union of the DOE regulation in a meeting conducted on December 12, 1984. Later, Martin Marietta officials notified plaintiffs that security inspectors who failed to pass the running test by December 24, 1985 would be demoted to a position of guard. No one was permitted to participate in the physical fitness training program until approved by Martin Marietta's Medical Department as physically able to do so. Martin Marietta's training program was not implemented until June, 1985.

During the remainder of 1985, many of the plaintiffs participated in the fitness training program. Martin Marietta subsequently removed all individuals who had not passed the physical fitness test as of December 24, 1985. Those individuals were demoted to guard on December 24, 1985. Those demoted either failed to pass the test or were unable to take the test because of physical impairments.

The complaint in this action was filed on May 29, 1986.

## II.

### The Allegations of the Parties

The plaintiffs allege that Martin Marietta was negligent in failing to timely follow 10 C.F.R. Part 1046.12 and implement a fitness training program. They contend that as a result of that failure they failed to pass the appropriate fitness tests and were demoted from security inspectors to guards. The defendant contends that no private right of action exists under 10 C.F.R. Part 1046.12, and plaintiffs' attempt to characterize such a private right of action as a tort negligence action fails to state a claim upon which relief can be granted.

Plaintiffs also contend that Martin Marietta breached the collective bargaining agreement between it and plaintiffs' union by refusing to arbitrate the issue of defendant's failure to timely implement a training program under 10 C.F.R. Part 1046.12. Defendant contends that this issue is not arbitrable under the collective bargaining agreement and that, in fact, federal regulations bar the arbitration of nuclear safety issues affecting DOE.

## III.

### The Negligence Action

Plaintiffs contend that Martin Marietta was negligent in failing to timely implement the training program required by 10 C.F.R. Part 1046.12. Plaintiffs assert that Part 1046.12 requires the program to have been implemented in January, 1985, but defendant did not begin its program until June, 1985. Plaintiffs allege that as a result of this negligence they were unable to pass the fitness tests by December, 1985.

■ The essence of the tort of negligence is the existence of some legal duty owed by the defendant to the plaintiff; and, in the absence of such a duty, there can be no liability for negligence. *AFG Industries, Inc. v. Holston Electric Co-Op*, 556 F.Supp. 33, 34 (E.D.Tenn.1982).

■ Plaintiffs' negligence theory appears to be an attempt to create a private right of action under 10 C.F.R. Part 1046.-12. Ordinary tort principals cannot be used to create such a private right of action under a federal statute. *Touche Ross & Company v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979).

■ Only if a private right of action has been created by Part 1046.12 can plaintiffs have a cause of action for defendant's failure to comply with that regulation. In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court listed four factors for consideration in determining whether Congress intended to create an implied private right of action in a statute where one was not expressly provided for. Those factors are: (1) whether the plaintiff is a member of a "class for whose especial benefit the statute was enacted,"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one,"; (3) whether implying the existence of a private cause of action is consistent with the object and legislative scheme of a statute; and (4) whether the cause of action is "traditional-

ly relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law." *Id.* at 78, 95 S.Ct. at 2088. The ultimate question in such cases is simply whether Congress intended to create the private remedy. *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981).

The court has considered congressional intent as expressed in the Atomic Energy Act of 1954 and finds no evidence of any intent to permit the creation of a private right of action through 10 C.F.R. Part 1046.12. In 42 U.S.C. § 2011, it is declared to be the policy of the United States that

> (a) The development, use, and control of atomic energy shall be directed so as to make the maximum contribution to the general welfare, subject at all times to the paramount objective of making the maximum contribution to the common defense and security;

In § 2012, Congress points out that "the development, utilization, and control of atomic energy for military and for all other purposes are vital to the common defense and security." In addition, in § 2013, Congress provided for the creation of:

> (c) A program for Government control of the possession, use, and production of atomic energy, of special nuclear material, whether owned by the Government or others, so directed as to make a maximum contribution to the common defense and security and the national welfare, and to provide continued assurance of the Government's ability to enter into and enforce agreements with nations or groups of nations for the control of special nuclear materials and atomic weapons.

To achieve the above goals, Congress authorized DOE to "prescribe such regulations or orders as it may deem necessary ... to guard against the loss or diversion of any special nuclear material ...", 42 U.S.C. § 2201(i), and to allow employees of DOE contractors to carry firearms to the extent "it deems necessary in the interest of the common defense and security." 42

U.S.C. § 2201(k). It was pursuant to these statutory provisions that 10 C.F.R. Part 1046 was promulgated.

The court has considered the factors enumerated in *Cort.* It is evident from the Act and the regulation in question that this statute and regulation were not intended for the "especial benefit" of privately employed protective force personnel at nuclear facilities. There is no evidence that Congress intended any private right of action to be created on their behalf. Rather, the purpose of the Act appears to have been to protect the common defense and security of the country, as well as the health and safety of the public, against the misuse of atomic energy.

The court concludes that no right of action is either expressed or implied for the benefit of the plaintiffs in either the relevant statutes or regulations. Nor can such an action be created by plaintiffs' attempt to characterize its action as one for negligence. *Touche Ross,* 442 U.S. at 568, 99 S.Ct. at 2485.

Accordingly, plaintiffs' negligence claim fails to state a claim upon which relief can be granted.

## IV.

### *The Refusal to Arbitrate the Dispute*

The plaintiffs contend that the defendant should be ordered to arbitrate the dispute over whether the company properly administered the program required by 10 C.F.R. Part 1046.12.

■■■ Arbitration is a matter of contract, and a party cannot be required to arbitrate any dispute which he has not agreed so to submit. *Steel Workers v. Warrior & Gulf Navigation Company,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). Jurisdiction to decide the issue of arbitrability rests with the court and not with the arbitrator. *AT & T Technologies, Inc. v. Communication Workers,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

■■ Initially, the court notes that the collective bargaining agreement between

plaintiffs' union and Martin Marietta defines grievances as "complaints, disputes, or misunderstandings involving questions of interpretation or application of any clause of this Contract." Article XV, Section 3. Further, the Agreement limits arbitration to three types of grievances, those involving either the "discharge or suspension of an employee, or the interpretation of provisions of this Contract, or an alleged violation of the Contract." Article XVI, Section 1. The question of Martin Marietta's application of 10 C.F.R. Part 1046 does not involve the interpretation or application of a clause in the contract, but rather the interpretation of a federal regulation which Martin Marietta is required to follow.

The collective bargaining agreement also contains "Administrative Understanding No. 3", which specifically deals with the contractual rights of those employees who fail to qualify as security inspectors under 10 C.F.R. Part 1046. Paragraph 5 of the Understanding states that "the DOE standards referred to in this Understanding [10 C.F.R. Part 1046] ... are not subject to the grievance procedure or arbitration." Accordingly, the Agreement expressly excludes arbitration of the DOE standards.

Finally, other DOE regulations make it clear that DOE "must retain absolute authority on all questions of security," 48 C.F.R. § 970.2201(b); and that "neither the security rules nor their administration are matters for collective bargaining between management and labor." 48 C.F.R. § 970.-2201(b)(2). In negotiating their contract with Martin Marietta, the plaintiffs' union should have been aware of these provisions.

The court concludes that the question of Martin Marietta's proper application of Part 1046 is not subject to arbitration under the collective bargaining agreement.

## V.

### Conclusion

In light of the foregoing, plaintiffs' motion for partial summary judgment [Court File # 5] is hereby DENIED, and defen-dant's motion for summary judgment [Court File # 13] is hereby GRANTED.

Order accordingly.

### ORDER

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that plaintiffs' motion for partial summary judgment [Court File # 5] is hereby DENIED, and defendant's motion for summary judgment [Court File # 13] is GRANTED.