**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DAVID PAWLICK, Individually and on
behalf of all others similarly
situated,
<u>Plaintiff-Appellant,</u>

v.

No. 97-2459

HAZEL O'LEARY, Secretary of
Energy, United States Department
of Energy; MARIO FIORI, Department
of Energy Manager at Savannah
River Site,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the District of South Carolina, at Aiken.
Charles E. Simons, Jr., Senior District Judge.
(CA-95-3300-1-6)

Argued: May 5, 1998

Decided: June 26, 1998

Before MURNAGHAN and LUTTIG, Circuit Judges, and
FRIEDMAN, United States District Judge for the Eastern District
of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Richard Donald Ries, Columbia, South Carolina, for
Appellant. Frances Cornelia Trapp, Assistant United States Attorney,

Columbia, South Carolina, for Appellees. **ON BRIEF:** Kelli Sullivan, SUGGS & KELLY, P.A., Columbia, South Carolina, for Appellant. J. Rene Josey, United States Attorney, Columbia, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiff-appellant, David Pawlick, individually and as a proposed class representative, filed suit in the district court alleging a cause of action under portions of the 1993 Defense Authorization Act (the "Act"), which directs the Department of Energy ("DOE") to develop workforce restructuring plans for nuclear facilities being downsized because of the end of the Cold War. 42 U.S.C. § 7274h-j. Pawlick was employed by a subcontractor (Raytheon) who provided support services to the DOE at its Savannah River Site. Pawlick was involuntarily terminated in June, 1995, as the result of the workforce restructuring at the Site.

Pawlick contends that although the DOE followed the Act by creating a workforce restructuring plan for the Savannah River site, the DOE violated the Act by declining to offer subcontractor employees the same benefits offered to management and operating (M&O) contractor employees. Employees of M&O contractors received a more comprehensive termination benefits package than did employees of subcontractors like Raytheon.[1] Pawlick argues that the Act required that employees of subcontractors be treated equally with employees of contractors.

_____

[1] Apparently, the DOE offered M&O employees more comprehensive benefits because those benefits were specifically required by the M&O contracts. Appellee's Brief at 6.

2

We hold that the district court was correct in dismissing plaintiff's claim because the Act did not create any rights enforceable by appellant in federal court. The district court concluded that, because the Act conferred discretion on the DOE to develop the restructuring plan -- and to determine what benefits to offer terminated employees -- the plaintiff could not maintain a cause of action for mandamus or under the Administrative Procedure Act (APA), and also concluded that the restructuring Act itself did not create a private cause of action. J.A. at 182-86.

As to the first two asserted bases of jurisdiction, the district court was correct that neither will lie unless the DOE lacks the discretion to distinguish between subcontractor and contractor employees in allocating benefits under a workforce restructuring plan.[2] Plaintiff apparently concedes as much, and contends only that the agency does not, in fact, have the discretion to confer different employment benefits on subcontractor and contractor employees.

The Act generally commits the development and implementation of workforce restructuring plans -- including employee termination benefit packages -- to the discretion of the DOE. While the Act states that the DOE "shall" develop a restructuring plan, the statute speaks in discretionary terms about the content of the plan.[3] Even appellant

_____

[2] See, e.g., Central South Carolina Chapter v. United States District Court for the District of South Carolina, 551 F.2d 559 (4th Cir. 1977) (A "writ of mandamus will not issue to compel an act involving the exercise of judgment and discretion;" "[t]he law must not only authorize the demanded action, but require it" and "the duty must be clear and indisputable"); Electricities of North Carolina, Inc. v. Southeastern Power Admin., 774 F.2d 1262, 1266 (4th Cir. 1985) (recognizing that agency action is unreviewable under the APA if the action is "committed to agency discretion by law").

[3] See, e.g., 42 U.S.C.§ 7274h(c) ("In preparing the plan . . . the Secretary shall be guided by the following objectives "); id. § 7274h(c)(1) (the plan "should be accomplished so as to minimize social and economic impacts" and "should" be made after notice to employees); id. § 7274h(c)(2) ("Employees . . . shall, to the extent practicable, receive preference in any hiring of the DOE"); id. § 7274h(d) ("The Secretary shall, subject to the availability of appropriations for such purpose" work to carry out the restructuring plan.) (emphases added).

3

acknowledges, as he must, that "the statute gives the Secretary discretion to determine specific benefits provided to the employees." Appellant's Brief at 8. He contends, nonetheless, that the DOE lacks the discretion to distinguish between subcontractor and contractor employees. No language in the Act, however, requires the DOE to treat subcontractor employees on par with other DOE contractor employees. The statute does define the term DOE employees for purposes of the Act to include subcontractor employees, see 42 U.S.C. § 7274j(2), but the statute does not preclude the workforce restructuring plan from accounting for differences in employee status and does not indicate that subcontractor-versus-contractor employee status is an impermissible basis for making such distinctions. Presumably, then, while subcontractor employees count as employees whose interests the DOE is directed to consider in developing its plan, the DOE is no more precluded from providing a different level of benefits based on subcontractor-versus-contractor employee status than based on length of employment. Accordingly, because the DOE was acting within the realm of its discretionary authority, neither plaintiff's mandamus nor his APA claim is cognizable.

Appellant also asks this court to imply a private cause of action to enforce the Defense Authorization Act. When asked to imply a private right of action, the "task [of the courts] is limited solely to determining whether Congress intended to create the private right of action asserted." Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979). The Supreme Court has made clear that, absent affirmative evidence that Congress intended to create a private right enforceable in federal court, the courts should not imply a private cause of action. For example, in Touche Ross, the Court declined to create an implied cause of action under § 17(a) of the Securities Exchange Act of 1934, which imposed a duty on brokers to maintain records. The Court reasoned that

> the statute by its terms grants no private rights to any identifiable class and proscribes no conduct as unlawful. And . . . legislative history of the 1934 Act simply does not speak to the issue of private remedies under § 17(a). At least in such a case as this, the inquiry ends there: The question whether Congress, either expressly or by implication, intended to

4

create a private right of action, has been definitely answered in the negative.

Id. at 576. The Court also cautioned that"implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best," id. at 571, and observed that

where, as here, the plain language of the provision weighs against implication of a private remedy, the fact that there is no suggestion whatsoever in the legislative history that [a statute] may give rise to suits for damages reinforces our decision not to find such a right of action implicit within the section.

Id. (citing Cort v. Ash, 422 U.S. 66, 82-84 (1975)).

As with the statute at issue in Touche Ross, Congress clearly did not intend for the 1993 Defense Authorization Act to create a private cause of action. The very fact that the provisions at issue were passed in what was essentially an appropriations bill would seem to indicate as much. More importantly, the plain language of the statute weighs against implying a private right of action because the language does not confer on DOE employees a right to a certain kind of benefits package, but rather clearly commits the content and terms of the restructuring plans to the discretion of the DOE. **4** Indeed, this Act is precisely the kind of act for which the Court has been most reluctant to imply a private cause of action. While "[t]he Court consistently has found that Congress intended to create a cause of action `where the language of the statute explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff in the case,'" Universities Research Ass'n v. Coutu, 450 U.S. 754, 771-72 (1981) (citation omitted), it has also observed that

_____

**4** Appellant's analogy to circuit court cases about the Airline Deregulation Act of 1978 is thus inapt because that Act specifically created a right of first hire in protected employees. See 49 U.S.C. § 42103 (providing that each "protected employee of an air carrier . . . is entitled to be the first employed").

5

there "would be far less reason to infer a private remedy in favor of individual persons" where Congress, rather than drafting the legislation "with an unmistakable focus on the benefitted class," <u>instead has framed the statute simply as a general prohibition or a command to a federal agency</u>.

<u>Id</u>. at 772 (emphasis added) (citations omitted) (declining to imply a private cause of action under the Davis-Bacon Act, which required that federal construction contracts contain certain minimum wage provisions, because the Act was "simply `phrased as a directive to federal agencies engaged in the disbursement of public funds'"). The Defense Authorization Act is just such a command to a federal agency: the Act directs the DOE to create workforce restructuring plans, but leaves the details to the agency's discretion. Implication of a private right of action would simply interfere with the DOE's exercise of that discretion.

Additionally, appellant concedes that there is no legislative history indicating that Congress intended to create a private cause of action, and that -- in fact -- there is no legislative history whatsoever for the specific provisions at issue. Appellant's Brief at 13. Moreover, the fact that the implied cause of action would be against the federal government is yet another reason to be particularly wary of implication. Waivers of federal sovereign immunity "must be unequivocally expressed in statutory text," <u>Lane</u> v. <u>Pena</u>, 518 U.S. 187, 192 (1996), and must be strictly construed in favor of the U.S. <u>Id</u>.

Accordingly, it would be improper for this court to imply a private cause of action under the Act. The district court having correctly determined that appellant does not have a remedy in federal court, the dismissal of plaintiff's claims is affirmed.

<u>AFFIRMED</u>

6