*506 WEAVEE, J.
(concurring in part and dissenting in part). I concur in the majority opinion to the extent it holds that the state courts have concurrent jurisdiction in this matter.
I dissent from the majority holding that 42 USC 9839(a) of the federal Head Start Act does not permit plaintiff to seek disclosure of information relevant to the defendant’s decision on competing bids for a contract. 42 USC 9839(a) provides, in pertinent part:
Each [Head Start] agency shall also provide for reasonable public access to information, including public hearings at the request of appropriate community groups and reasonable public access to books and records of the agency or other agencies engaged in program activities or operations involving the use of authority or funds for which it is responsible.
For the reasons stated in Justice Kelly’s dissent, I would hold that this statutory language does provide plaintiff a right to seek “reasonable” disclosure of records pertaining to contract bids submitted to a Head Start agency.
I write separately to elaborate on the majority’s misreading of the effect of Alexander v Sandoval[1] on Cort v Ash[2] Specifically, the majority is wrong to suggest that Alexander “appears to have abandoned the Cort inquiry altogether in favor of a completely textual analysis in determining whether a private remedy exists under a particular statute.” Ante at 499.
Cort identified four factors relevant to determining whether a federal statute implied a private remedy where the statute did not expressly provide one. Cort held:
*507 First, is the plaintiff “one of the class for whose especial benefit the statute was enacted,” . .. that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? .. . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?[3]
Unlike Cort’s focus on whether a cause of action can be inferred from a statute, Alexander involved a distinct issue: whether a private cause of action could be inferred from a regulation that forbids conduct beyond that which was forbidden by the statute under which the regulation was promulgated.[4]
Because the conduct at issue in Alexander was prohibited by a regulation, but not by the statute pursuant to which the regulation was adopted, Alexander held that a cause of action alleging conduct in violation of the regulation could not be inferred from the statute. Given *508 this situation, it was unnecessary for Alexander to delve deeply into the Cort factors to resolve whether a cause of action could be inferred from the statute.
Though the majority may prefer that Cort’s factors be abandoned and a “completely textual” approach be adopted, neither logic nor federal precedent supports its preference. First, it is absurd to advocate a “completely textual approach” where the need to examine whether a cause of action may be inferred from a statute is engendered by the lack of an expressly stated cause of action in the text of the statute. Further, the majority makes no attempt to explain how its “completely textual” approach differs from the Cort factors.
Second, while the majority correctly notes that not every federal case involving whether a private cause of action may be inferred from a statute has applied all the four Cort factors, it is an overstatement to suggest that the federal courts have “abandoned the Cort inquiry altogether.” Even federal cases relied on by the majority employ a Cori-based analysis. For example in Hodder v Schoharie Co Child Dev Council, Inc, 1995 US Dist LEXIS 19049, *10 (ND NY, 1995), the court premised its analysis as follows:
The Court may infer a private right of action from a federal statute that does not expressly create one only if the statute’s language, structure, and legislative history reveal Congress’ intent to create a private right of action. See Thompson v. Thompson, 484 U.S. 174, 179, 98 L. Ed. 2d 512, 108 S. Ct. 513 (1988); Touche Ross & Co. v. Redington, 442 U.S. 560, 61 L. Ed. 2d 82, 99 S. Ct. 2479 (1979); Cort v. Ash, 422 U.S. 66, 45 L. Ed. 2d 26, 95 S. Ct. 2080 (1975). Courts normally try to divine Congressional intent by applying the four Cort factors: 1) whether plaintiffs belong to the class for whose special benefit Congress passed the statute; 2) whether the indicia of legislative intent reveal a congressional purpose to provide a private cause of action; *509 3) whether implying a private cause of action is consistent with the underlying purposes of the legislative scheme; and 4) whether the plaintiffs cause of action concerns a subject that is traditionally relegated to state law. Merrell Dow [Pharmaceuticals Inc v Thompson], 478 U.S. [804, 810-811; 106 S Ct 3229; 92 L Ed 2d 650 (1986)]; Cort, 422 U.S. at 78.
Hodder applied each factor from Cort to the provision of the Head Start Act at issue in that case.
That the majority misunderstands Alexander’s effect is underscored by a recent United States Supreme Court decision, Jackson v Birmingham Bd of Ed, 544 US_,_; 125 S Ct 1497, 1506; 161 L Ed 2d 361, 373 (2005), where the Court emphasized that Alexander’s holding is simply premised on the fact that the regulations at issue in Alexander extended protection beyond the limits of the statute at issue in Alexander. Describing the holding of Alexander, Jackson stated:
[In Alexander] we rejected the contention that the private right of action to enforce intentional violations of Title VI encompassed suits to enforce the disparate-impact regulations. We did so because “it is clear... that the disparate-impact regulations do not simply apply § 601 — since they indeed forbid conduct that § 601 permits — and therefore clear that the private right of action to enforce § 601 does not include a private right to enforce these regulations.” [Alexander] at 285, 149 L. Ed. 2d 517, 121 S. Ct. 1511. See also Central Bank of Denver, N. A. v. First Interstate Bank of Denver, N. A., 511 U.S. 164, 173, 128 L. Ed. 2d 119, 114 S. Ct. 1439 (1994) (A “private plaintiff may not bring a [suit based on a regulation] against a defendant for acts not prohibited by the text of [the statute]”).
In this case we must necessarily look beyond the text of the statute at issue to discern whether Congress intended that a private person be able to seek disclosure of documents from a Head Start agency. The text of the statute at issue in this case, 42 USC 9839(a), does not *510 expressly create a private cause of action to enforce its provision regarding public access to information. Thus, it is necessary to look beyond the text to determine whether Congress intended to create a private cause of action. As recognized in California v Sierra Club, 451 US 287, 293; 101 S Ct 1775; 68 L Ed 2d 101 (1981), the four Cort factors
present the relevant inquiries to pursue in answering the recurring question of implied causes of action. Cases subsequent to Cort have explained that the ultimate issue is whether Congress intended to create a private right of action ... but the four factors specified in Cort remain the “criteria through which this intent could be discerned.” [Citations omitted.]
Given the task at hand and the federal precedent by which we are bound, it is absurd to suggest that we must employ a “completely textual” approach. Any inquiry into whether a private cause of action may be inferred requires consideration of the intent of Congress and Cort is our guide. Regardless of the majority’s apparent discomfort with Cort’s factors and inferred causes of action, we are bound by federal law and five votes have not combined in any one case in the United States Supreme Court to declare Cort a dead letter.[5]

 532 US 275; 121 S Ct 1511; 149 L Ed 2d 517 (2001).

 422 US 66; 95 S Ct 2080; 45 L Ed 2d 26 (1975).

3 Cort, supra at 78.

 Alexander involved an interpretation of Title VI of the Civil Rights Act of 1964, which provides in § 601 that no person shall, “on the ground of race, color, or national origin, he excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity” covered by Title VI. 42 USC 2000d. Section 602 of the statute authorizes federal agencies to implement the provisions in § 601 by regulations.
The Department of Justice adopted regulations pursuant to § 602 that forbid funding recipients from adopting policies that created a disparate impact on individuals because of their race, color, or national origin. See 28 CFR 42.104(b)(2) (1999). Claiming that an English-only policy caused such disparate impacts, the plaintiffs in Alexander sued to enjoin the policy. While the Alexander Court assumed that the regulations were valid, the Court held that there was no private cause of action as a result of the policy because § 601 did not prohibit disparate impacts.

 In Thompson v Thompson, 484 US 174; 108 S Ct 513; 98 L Ed 2d 512 (1988), Justice Scalia (concurring in the judgment) expressed his vigorous disagreement with whether the Court should reaffirm Cort and whether it was appropriate to infer private causes of action from federal statutes that do not expressly provide them. Justice Scalia’s view of Cort and inferred causes of action has not yet garnered the requisite five votes.