# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50558

United States Court of Appeals
Fifth Circuit

**FILED**
June 15, 2017

Lyle W. Cayce
Clerk

ADRIAN SALAZAR,

> Plaintiff–Appellee,

v.

SOUTH SAN ANTONIO INDEPENDENT SCHOOL DISTRICT,

> Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, CLEMENT, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Adrian Salazar sued the South San Antonio Independent School District for damages under Title IX of the Education Amendments Act of 1972[1] because Michael Alcoser, while a vice principal and subsequently a principal of elementary schools in the District, repeatedly molested Salazar, a student. Though all of the material facts are undisputed and largely stipulated, the case was tried before a jury, which found in favor of Salazar. The district court entered a judgment awarding him $4,500,000. We conclude that the judicially implied private right of action under Title IX does not impose liability on a

---

[1] 20 U.S.C. § 1681 *et seq.*

school district when the only employee or representative of the district with actual knowledge of the molestation was the perpetrator himself, even if the perpetrator had authority to institute corrective measures on behalf of the district to end discrimination by other individuals or in the school's programs. We accordingly reverse the district court's judgment.

## I

Adrian Salazar was a student at Price Elementary in the South San Antonio Independent School District (the District). Michael Alcoser was then a vice principal at the school and frequently removed Salazar and his brother from lunch or physical education classes and took them to his office. At first, Alcoser gave Salazar and his brother gifts and played games with them. During Salazar's third-grade year, Alcoser would buy Salazar's lunch, which they shared in Alcoser's office behind closed doors, and Alcoser eventually molested Salazar. The abuse continued through Salazar's fifth-grade year and the following summer at a computer camp held at another elementary school within the District. During Salazar's sixth-grade year, he attended a middle school. Alcoser had been promoted and served as the principal of Carrillo Elementary in the District. However, Alcoser persuaded Salazar's parents to drive him to Carrillo Elementary, approximately twice a week, so that Alcoser could "tutor" Salazar. Salazar's family discovered the abuse while he was in the seventh grade.

Uncontroverted testimony at trial established that as a vice-principal, and later a principal, of elementary schools within the District, Alcoser had corrective authority to address gender discrimination and sexual harassment during the time that he molested Salazar, though there is no evidence that the District designated Alcoser an "appropriate person" for purposes of reporting or correcting his own misconduct. The parties stipulated before trial that Alcoser, the perpetrator, was the only District employee or representative who

had actual knowledge of the abuse at the time it occurred and that the abuse violated the District's policies. The District received federal funding during the period in question. Salazar's parents reported Alcoser's sexual abuse of their son to the San Antonio police, the District fully cooperated in the ensuing investigation, and the District terminated Alcoser's employment. Alcoser ultimately pleaded guilty to aggravated sexual assault and was sentenced to eighteen years in prison.

Salazar sued the District and Alcoser for damages. After the district court dismissed a number of the causes of action, Salazar filed an amended complaint that included only a claim for monetary damages under Title IX against the District. The District moved for summary judgment, contending that Alcoser's knowledge of his own wrongdoing could not be imputed to the District, but that motion was denied, and the case proceeded to trial.

The jury heard testimony from Salazar, his mother, his brother, and his therapist. The District presented testimony from two employees: the District's Title IX coordinator, and the secretary of Price Elementary's principal at the time of the abuse. Each party moved for judgment as a matter of law at the close of the other's evidence; both motions were denied.

The jury found that "an official of the school district who was assigned the responsibility of preventing sexual harassment and granted authority to remedy sexual harassment had actual knowledge of the sexual harassment of Adrian Salazar." It further found that such an official "reacted with deliberate indifference to the sexual harassment" of Salazar. Salazar acknowledges that there is no evidence that any official other than Alcoser had actual knowledge of the sexual harassment or reacted with deliberate indifference. The jury found that Salazar suffered damages in the amount of $4,500,000.

After the jury returned its verdict, the District renewed its motion for judgment as a matter of law, contending that the implied private right of action

No. 15-50558

for damages under Title IX does not extend to cases in which only the wrongdoer had actual knowledge of the wrongdoing. The district court concluded that Title IX liability is established when there is "(1) actual notice of sexual harassment, (2) [to] an official empowered to take corrective action, (3) who reacts with deliberate indifference." The district court concluded that Alcoser met all three criteria. The court distinguished the decisions cited by the District as involving "rank-and-file teacher[s] [and] instructor[s]," and reasoned that in those cases, the wrongdoer did not have "the authority to take corrective action to end sexual harassment," while in the present case, Alcoser did. The district court accordingly denied the District's motion for judgment as a matter of law, as well as its motions in the alternative for a new trial and for remittitur, and entered a judgment awarding Salazar $4,500,000. The District appealed.

## II

With exceptions not relevant here, Title IX provides, in 20 U.S.C. § 1681(a), that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[2] Title IX includes express authorization of administrative processes that permit federal agencies and departments to terminate or refuse to provide financial assistance or funding to entities that fail to comply with § 1681.[3] The reach of Title IX has, however, been extended by the Supreme Court by implication.

As recounted in the Supreme Court's opinion in *Gebser v. Lago Vista Independent School District*, the Court has, in a series of decisions, recognized

---

[2] 20 U.S.C. § 1681(a).
[3] 20 U.S.C. § 1682.

4

implied causes of action under Title IX.[4]  In *Cannon v. University of Chicago*,[5] the Supreme Court held "that Title IX is also enforceable through an implied private right of action."[6]  In *Franklin v. Gwinnett County Public Schools*,[7] the Court concluded "that monetary damages are available in the implied private action" and that "a school district can be held liable in damages in cases involving a teacher's sexual harassment of a student."[8]  While *Franklin* "d[id] not purport to define the contours of that liability," the Court "face[d] that issue squarely" in *Gebser*.[9]  In *Gebser*, a teacher had engaged in a sexual relationship with one of his high school students.[10]  The Court held that "damages may not be recovered in those circumstances unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's conduct."[11]

Both Salazar and the District rely on *Gebser*, arguing that it is outcome-determinative in this case.  Salazar contends that Alcoser was "an official of the school district who at a minimum ha[d] authority to institute corrective measures on the district's behalf" and had "actual notice of" and was

---

[4] 524 U.S. 274, 281 (1998).

[5] 441 U.S. 677 (1979).

[6] *Gebser*, 524 U.S. at 281 (citing *Cannon*, 441 U.S. at 709).

[7] 503 U.S. 60 (1992).

[8] *Gebser*, 524 U.S. at 281 (citing *Franklin*, 503 U.S. at 74-75).

[9] *Id.*

[10] *Id.* at 277.

[11] *Id.*; *see also id.* at 290:

An "appropriate person" under § 1682 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination.  Consequently, in cases like this one that do not involve official policy of the recipient entity, we hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond.

"deliberately indifferent to" his own abusive conduct.[12]   Therefore, Salazar insists, the District is liable because Alcoser's conduct was the District's conduct by virtue of his authority to redress discrimination on the basis of sex. The District has put forth a number of arguments in response.  Among them is its reliance upon the statement in *Gebser* that "[w]here a school district's liability rests on actual notice principles, however, the knowledge of the wrongdoer himself is not pertinent to the analysis."[13]  We conclude that this statement was part of the Supreme Court's holding in *Gebser*, not dicta.[14]

The statement was made in response to footnote 8 in JUSTICE STEVENS' dissenting opinion.[15]  JUSTICE STEVENS disagreed with the parameters of the private cause of action and remedy a majority of the Court recognized in *Gebser* because JUSTICE STEVENS would have formulated the implied right of action based on "settled principles of agency law."[16]  But in footnote 8, JUSTICE STEVENS additionally asserted that if the Court's majority opinion were to apply its own formulation of the private cause of action to the facts correctly, the court of appeals' judgment in favor of the recipient should be reversed because the teacher who abused his student had the authority to take corrective measures when he had actual knowledge of harassment.[17]  In other

---

[12] *See id.* at 277.

[13] *Id.* at 291.

[14] *See United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014) ("A statement is not dictum if it is necessary to the result or constitutes an explication of the governing rules of law.") (quoting *Int'l Truck & Engine Corp. v. Bray,* 372 F.3d 717, 721 (5th Cir. 2004)).

[15] *Gebser*, 524 U.S. at 291 ("Justice STEVENS points out in his dissenting opinion that Waldrop [the teacher who sexually abused a student] of course had knowledge of his own actions.").

[16] *Id.* at 298-99 (STEVENS, J., dissenting).

[17] *Id.* at 298 n.8 (STEVENS, J., dissenting):

The Court's holding is also questionable as a factual matter.  Waldrop himself surely had ample authority to maintain order in the classes that he conducted.  Indeed, that is a routine part of every teacher's responsibilities.  If Gebser had been the victim of sexually harassing conduct by other students during those classes, surely the teacher would have had ample authority to

words, JUSTICE STEVENS advocated that the perpetrator of the sexual abuse can be deemed an "appropriate person" under Title IX and for purposes of the private cause of action that a majority of the Court held was implied if the perpetrator had authority to correct discrimination or harassment. Writing for a majority of the Court, JUSTICE O'CONNOR succinctly rejected JUSTICE STEVENS' understanding of the contours of the private right of action the Court had crafted, saying: "Where a school district's liability rests on actual notice principles, however, the knowledge of the wrongdoer himself is not pertinent to the analysis."[18] Applying that principle to the present facts, the District is not liable for damages based on Title IX since Alcoser's knowledge of his own wrongdoing is not pertinent.

Nevertheless, because the claim in *Gebser* did not allege the precise factual pattern present in this appeal, we will consider the text of Title IX, other of the Supreme Court's writings regarding implied rights of action and remedies, and the import of the principles animating *Gebser*'s formulation of when a recipient of federal funds may be liable under Title IX for sexual abuse of a student by a teacher.

### III

### A

Salazar acknowledges that liability under Title IX arises not from the discrimination or harassment itself but from "an *official decision by the recipient* not to remedy the violation."[19] Salazar maintains that "[w]hether a

---

take corrective measures. The fact that he did not prevent his own harassment of Gebser is the consequence of his lack of will, not his lack of authority.

[18] *Id.* at 291.

[19] *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642 (1999) (emphasis added) (quoting *Gebser*, 524 U.S. at 290); *see also id.* at 643 (emphasizing that "*Gebser* sought to eliminate any 'risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions'" (quoting *Gebser*, 524 U.S. at 290-91)).

Title IX compliance officer acts with deliberate disregard for someone else's harassment or abuse of a student, or performs these acts himself, a school district is directly liable under Title IX." Salazar contends that "whether Alcoser committed the abuse himself or deliberately disregarded abuse committed by a teacher, coach or janitor, the simple fact remains that no person at the District above Alcoser would have known about the abuse." "Either way," Salazar correctly observes, "members of the District's board or superintendent's office would not know of the abuse, yet the latter clearly would support the District's direct liability under *Gebser*."

The obvious distinction between the circumstances that Salazar posits is that a perpetrator of sexual abuse who also "has authority to institute corrective measures on the district's behalf," within the meaning of *Gebser*,[20] is highly unlikely either to take "corrective measures on the district's behalf" or to report his own criminal behavior to another school district official who is authorized to take corrective measures. In contrast, if a school district official with authority to remedy discrimination proscribed by Title IX was not a perpetrator and became aware that a district employee had sexually abused a student, it could reasonably be expected that the official with remedial authority would take action and would not exhibit deliberate indifference to the victimization of a student.

But more importantly, implying a right of action under Title IX that would permit recovery of damages from a funding recipient when only the person who committed sexual abuse had actual knowledge of his intentional misconduct would be contrary to the statutory intent expressed in 20 U.S.C. § 1682. There is a remedial scheme expressly set forth in § 1682, which provides that federal funding or financial assistance cannot be terminated or

---

[20] *Gebser*, 524 U.S. at 277.

withheld unless "the department or agency concerned has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means."[21] It is unreasonable to construe § 1682 to mean that an employee of a school district who committed sexual abuse in violation of the prohibitions of Title IX would be an "appropriate person or persons" concerning that sexual abuse. When an individual's intentional conduct constitutes the discrimination, the directive to "advise[]" an appropriate person "of the failure to comply" connotes that the "appropriate person" is unaware of the misconduct.[22] Moreover, when an individual's intentional conduct that is contrary to a district's policies is at issue, it cannot be said that Congress intended the "determin[ation] that [the recipient's] compliance cannot be secured by voluntary means" to hinge on *the offending individual's* response if he was the only employee or representative of the district who was "advised" of the "failure to comply."[23]

## B

Though the cause of action recognized in *Gebser* is a judicially implied one,[24] "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress."[25] The "remedies available are those 'that Congress enacted into law.'"[26] "Statutory intent . . . is determinative" of whether there was congressional "intent to create not just a private right but also a private remedy."[27] "Without [statutory intent], a cause of action does not exist and courts may not create one, no matter how desirable that might

---

[21] 20 U.S.C. § 1682.

[22] *See id.*

[23] *Id.*

[24] *Gebser*, 524 U.S. at 284 ("[T]he private right of action under Title IX is judicially implied . . . .").

[25] *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

[26] *Id.* (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)).

[27] *Id.*

be as a policy matter, or how compatible with the statute."[28]  The Supreme Court has admonished that "[r]aising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals."[29]  We discern no congressional intent in Title IX to provide a private cause of action for damages when the only employee or representative of a funding recipient who had knowledge of the discrimination was the offender.

The Supreme Court's extensive elucidation in *Gebser* of how it derived the contours of Title IX's implied private cause of action for damages supports the conclusion that one in Alcoser's shoes should not be considered to have acted in his capacity as a school district official with authority to remedy discrimination when he failed to remedy or report his own misconduct.  That is because, at its core, the implied Title IX remedy that the Supreme Court recognized depends on meaningful notice to a funding recipient so that it will have an opportunity to remedy the discrimination.

In *Gebser*, the Supreme Court said that "[b]ecause the private right of action under Title IX is judicially implied, we have a measure of latitude to

---

[28] *Id.* at 286-87.

[29] *Id.* at 287 (quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 365 (1991) (SCALIA, J., concurring in part and concurring in judgment)); *see also id.*:

> Respondents would have us revert in this case to the understanding of private causes of action that held sway 40 years ago when Title VI was enacted. That understanding is captured by the Court's statement in *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 [ ] (1964), that "it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose" expressed by a statute. We abandoned that understanding in *Cort v. Ash*, 422 U.S. 66, 78 [ ] (1975)—which itself interpreted a statute enacted under the *ancien regime*—and have not returned to it since. Not even when interpreting the same Securities Exchange Act of 1934 that was at issue in *Borak* have we applied *Borak*'s method for discerning and defining causes of action. Having sworn off the habit of venturing beyond Congress's intent, we will not accept respondents' invitation to have one last drink. (citations omitted).

shape a sensible remedial scheme that best comports with the statute."[30]  But the Court recognized that "[a] private remedy should not be implied if it would frustrate the underlying purpose of the legislative scheme."[31]

The Supreme Court declined to create an implied remedy that would "permit a damages recovery against a school district for a teacher's sexual harassment of a student based on principles of *respondeat superior* or constructive notice, *i.e.*, without actual notice to a school district official."[32]  In concluding that liability premised on such a basis would "'frustrate the purpose' of Title IX," the Court said, "it does not appear that Congress contemplated unlimited recovery in damages against a funding recipient where the recipient is unaware of discrimination in its programs."[33]  The Court drew upon contract principles, observing that Title IX "condition[s] an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds."[34]  The Court reasoned that "[i]f a school district's liability for a teacher's sexual harassment rests on principles of constructive notice or *respondeat superior*, it will likewise be the case that the recipient of funds was unaware of the discrimination."[35]  The Court continued, "[i]t is sensible to assume that Congress did not envision a recipient's liability in damages in that situation," and "[w]e think it unlikely that [the school board] further agreed to suffer liability whenever its employees discriminate on the basis of sex."[36]  A

---

[30] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284 (1998).

[31] *Id.* at 285 (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 703 (1979)).

[32] *Id.*

[33] *Id.*

[34] *Id.* at 286.

[35] *Id.* at 287.

[36] *Id.* at 287-88 (quoting *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 654 (5th Cir. 1997)).

logical corollary is that it is unlikely that a school board would agree to liability in circumstances like those in the present case.

## C

When the perpetrator is the only school official with notice, and the acts of the perpetrator unquestionably violate the school district's policies, the purposes of Title IX are not served by imposing liability upon the funding recipient. The implied cause of action would be more akin to strict liability in such a circumstance, or to *respondeat superior*, which the Supreme Court expressly rejected as a basis for an implied right of action under Title IX.[37]

In *Davis*, the Supreme Court reaffirmed that in *Gebser*, it "rejected the use of agency principles to impute liability to the district for the misconduct of its teachers," and "[l]ikewise . . . declined the invitation to impose liability under what amounted to a negligence standard—holding the district liable for its failure to react to teacher-student harassment of which it knew or *should have* known."[38] To hold a district liable when an individual authorized to take corrective measures becomes a perpetrator of sexual abuse, and the district has no knowledge of that abuse, would be to embrace a standard of culpability less than negligence. The district would be liable even if it did not know or should not have known when it gave the perpetrator authority to remedy discrimination based on sex that he would become a sex offender.

---

[37] *Id.* at 287-88.

[38] *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 642 (1999) (citing *Gebser*, 524 U.S at 283, 290); *see also Gebser*, 524 U.S. at 282, 285 (reflecting that "petitioners and the United States submit that a school district should at a minimum be liable for damages based on a theory of constructive notice, *i.e.*, where the district knew or 'should have known' about harassment but failed to uncover and eliminate it" but declining to adopt that standard of culpability).

No. 15-50558

## D

The conclusions that the Supreme Court drew from its examination of the administrative enforcement provisions expressly set forth in Title IX further indicate that an implied private action does not extend to cases like this one. The Court recognized that "Title IX's express means of enforcement—by administrative agencies—operates on an assumption of actual notice to officials of the funding recipient."[39] The Court noted that "an agency may not initiate enforcement proceedings until it 'has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means.'"[40] The Court also observed that regulations implementing Title IX's express administrative enforcement scheme "requir[e] resolution of compliance issues 'by informal means whenever possible,' and prohibit[] commencement of enforcement proceedings until the agency has determined that voluntary compliance is unobtainable and 'the recipient . . . has been notified of its failure to comply and of the action to be taken to effect compliance.'"[41] Importantly, the Court reasoned that notifying "the appropriate person" and the opportunity for voluntary compliance prevents education funding from being stripped when the recipient would have been willing to take corrective measures.[42] The Court

---

[39] *Gebser*, 524 U.S. at 288.

[40] *Id.* (quoting 20 U.S.C. § 1682).

[41] *Id.* (quoting 34 C.F.R. §§ 100.7(d), 100.8(d) (1997) and citing 34 C.F.R. § 100.8(c) (1997)).

[42] *Id.* at 289:

> Presumably, a central purpose of requiring notice of the violation "to the appropriate person" and an opportunity for voluntary compliance before administrative enforcement proceedings can commence is to avoid diverting education funding from beneficial uses where a recipient was unaware of discrimination in its programs and is willing to institute prompt corrective measures. The scope of private damages relief proposed by petitioners is at odds with that basic objective. When a teacher's sexual harassment is imputed to a school district or when a school district is deemed to have "constructively"

13

concluded that "[i]t would be unsound . . . for a statute's *express* system of enforcement to require notice to the recipient and an opportunity to come into voluntary compliance while a judicially *implied* system of enforcement permits substantial liability without regard to the recipient's knowledge or its corrective actions upon receiving notice."[43]

In looking to Title IX's express enforcement scheme for guidance in establishing parameters for an implied right of action, the Supreme Court also recognized that "an award of damages in a particular case might well exceed a recipient's level of federal funding."[44]  The Court concluded that because Title IX's "express enforcement scheme hinges its most severe sanction on *notice and unsuccessful efforts to obtain compliance*," it could not "attribute to Congress the intention to have implied an enforcement scheme that allows imposition of greater liability without comparable conditions."[45]

In choosing the standard by which to measure the recipient's response to actual notice of discrimination in a private action, the Court again took into account the fact that Title IX's "administrative enforcement scheme presupposes that an official who is advised of a Title IX violation *refuses to take action to bring the recipient into compliance*."[46]  The Court said, "[t]he premise, in other words, is *an official decision by the recipient not to remedy the violation*."[47]  The Court recognized that if it were to adopt "a lower standard, there would be a risk that the recipient would be liable in damages not for *its*

---

known of the teacher's harassment, by assumption the district had no actual knowledge of the teacher's conduct.  Nor, of course, did the district have an opportunity to take action to end the harassment or to limit further harassment.

[43] *Id.*
[44] *Id.* at 290.
[45] *Id.* (emphasis added).
[46] *Id.* (emphasis added).
[47] *Id.* (emphasis added).

14

*own official decision* but instead for its *employees' independent actions*."[48] The Court therefore required deliberate indifference to discrimination as a component of the implied private action for damages under Title IX.[49]

The goals and purpose of Title IX's express remedial scheme would not be accomplished or effectuated by permitting damage awards in circumstances like those in the present case, in which the person who committed sexual molestation is the only district employee or representative who knew of the abuse. The fact that the perpetrator was authorized to respond to discrimination or sexual harassment of students on behalf of the district does not change the analysis. When only the perpetrator knows he has sexually abused a student, it cannot be said that

- the district's "compliance [with 'the nondiscrimination mandate' in Title IX] cannot be secured by voluntary means,"[50]
- the district's "voluntary compliance is unobtainable,"[51]
- the district "has been notified of its failure to comply and of the action to be taken to effect compliance,"[52]
- the district "refuses to take action to bring the recipient into compliance,"[53]
- the district refused to take action after "notice and unsuccessful efforts to obtain compliance,"[54] or

---

[48] *Id.* at 290-91 (emphasis added).

[49] *Id.* at 290 ("We think, moreover, that the response must amount to deliberate indifference to discrimination.").

[50] *Id.* at 288 (quoting 20 U.S.C. § 1682).

[51] *Id.*

[52] *Id.* (quoting 34 C.F.R. § 108(d) and citing § 108(c)).

[53] *Id.* at 290.

[54] *Id.*

- the district has made its "own official decision"[55] "not to remedy the violation."[56]

The failure of an employee who committed sexual harassment to notify any other "appropriate person" of the transgressions, or in this case, the serious crimes that were committed, should be considered the offending employee's "independent action[]," not the district's "own official decision"[57] or "an official decision by the recipient not to remedy the violation."[58] To hold that an implied private action under Title IX permits the recovery of damages when only the person who discriminated or molested had knowledge of his actions would "permit[] substantial liability without regard to the recipient's . . . corrective actions upon receiving notice,"[59] since a district cannot be expected to take corrective actions while the offender conceals his wrongdoing. The "premise" of both the express and implied remedies under Title IX is "an official decision by the recipient not to remedy the violation."[60] Acts or omissions of the perpetrator cannot reasonably be deemed "an official decision by the recipient."[61]

### E

As discussed above, the Supreme Court held in *Gebser* that "[w]here a school district's liability rests on actual notice principles . . . the knowledge of the wrongdoer himself is not pertinent to the analysis."[62] Salazar argues that his claim is not based on actual notice principles but, rather, is based on the District's own actions, through Alcoser, a person designated by the District as

---

[55] *Id.* at 291.
[56] *Id.* at 290.
[57] *Id.* at 290-91.
[58] *Id.* at 290.
[59] *Id.* at 289.
[60] *Id.* at 290.
[61] *See id.*
[62] *Id.* at 291.

an "appropriate person" to remedy discrimination or abuse. But for the reasons considered above, when an "appropriate person" commits sexual abuse, violating a district's clear policies prohibiting and condemning sexual contact with or abuse of a student, imposing liability on the district when it had no knowledge of the abuse would be counter to the purposes of Title IX. Title IX's legislative scheme would be frustrated if a recipient of Title IX funding could be held liable for damages for sexual abuse when there was virtually no likelihood that that the recipient would receive meaningful notice of the sexual abuse with the corresponding opportunity to end it.

## F

The district court treated the analysis in *Gebser* as "elements" of an implied right of action that apply irrespective of the fact pattern presented. But the prerequisites for liability articulated in *Gebser* were not all-encompassing. They were tailored to fit the fact pattern then before the Court. The Court framed the question it was deciding as "when a school district may be held liable in damages in an implied right of action under Title IX . . . for the sexual harassment of a student by one of the district's teachers."[63] The answer was "damages may not be recovered in *those circumstances* unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct."[64] That answer is not a declaration of the "elements" of a private cause of action that will be mechanically applied in *all circumstances* involving sexual abuse of a student without any refinement for a case such as the present one.

---

[63] *Id.* at 277.
[64] *Id.* (emphasis added).

No. 15-50558

The words "at a minimum"[65] are also qualifiers.  A district is liable as a consequence of "an official['s]" actual notice and deliberate indifference.  The Court left room for identifying attributes of such an official beyond the "minimum" qualifiers set forth in *Gebser* when facts different from those in *Gebser* arose and warranted additional parameters in order to insure that the implied remedy under Title IX was aligned with the statute's express provisions.

## IV

The only issues presented in this appeal pertain to questions of law. There are no material factual disputes, as both parties acknowledge. Judgment as a matter of law is proper when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party" on a dispositive issue.[66]  The legal conclusions underlying the denial of judgment as a matter of law, of course, are subject to de novo review.[67]  An implied cause of action under Title IX does not impose liability upon a recipient of federal funds when only the perpetrator had actual knowledge of his sexual harassment of a student, even if the perpetrator was authorized by the recipient to institute corrective measures on the district's behalf in response to sexual harassment by others. Accordingly, the District is not liable in damages to Salazar.

---

[65] *See id.* at 290 ("Consequently, in cases like this one that do not involve official policy of the recipient entity, we hold that a damages remedy will not lie under Title IX unless an official who *at a minimum* has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." (emphasis added)).

[66] FED. R. CIV. P. 50(a).

[67] *See Tamez v. City of San Marcos*, 118 F.3d 1085, 1091 (5th Cir. 1997) ("We review *de novo* the magistrate judge's legal conclusions, whether regarding federal or state law, in entering judgment under Rule 50(b).").

No. 15-50558

*     *     *

The abuse that Salazar suffered is heart-wrenching, and Alcoser's conduct and breach of trust is despicable.  But requiring a recipient of Title IX funds to respond in damages when its employee sexually abuses a student and the only employee or representative of the recipient who has actual knowledge of the abuse is the offender does not comport with Title IX's express provisions or implied remedies. We therefore REVERSE the district court's judgment and RENDER judgment for the District.